STATE OF CONNECTICUT *v.* SCOTT TYRONE ANDREWS
(10597)

O'CONNELL, LANDAU and HEIMAN, Js.

Argued October 1—decision released November 24, 1992

*Susan M. Hankins,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert E. Carlson, Jr.,* senior assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1),[1] as a lesser included offense of murder. The jury acquitted the defendant on the charge of conspiracy to commit murder. The trial court granted the defendant's postverdict motion to set aside a guilty verdict as to the count of conspiracy to commit assault in the first degree. On appeal, the defendant claims that the trial court improperly instructed the jury (1) by telling them that the law is made to protect society and the innocent and not the guilty, thereby diluting the presumption of innocence, and (2) by setting

---

[1] General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

forth an incorrect definition of the term reasonable doubt as well as an incorrect standard of proof concerning it. We disagree and affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On October 23, 1989, the victim, Wendell Pickney, together with three other youths left Weaver High School in Hartford in a red Jeep driven by Antwane Williams-Bey. They drove to Bloomfield High School to visit with some female students. A second car, a blue Oldsmobile, driven by a youth called Tiger, with Trevor Cumberbatch as a passenger, accompanied them to Bloomfield.

When they returned to Hartford on Blue Hills Avenue, one of the passengers in the red Jeep, Kevin Waite, observed a green Datsun with three people inside make a right turn off Harold Street. Waite observed that Kendall Crowe was driving the Datsun, Urocca Lindsay was in the front passenger seat and the defendant, Scott Tyrone Andrews, occupied the rear seat. These three individuals lived in a neighborhood different from that of the victim and his friends. The residents of these two neighborhoods had previously exhibited ill will toward each other.

Waite observed Lindsay point a gun out of the front passenger window of the Datsun, but Lindsay did not fire a shot at that time. The Datsun continued to follow the Jeep until it reached Mt. Sinai Hospital. It turned abruptly into the hospital and then exited onto Manchester Street. The Jeep and the blue Oldsmobile both made U-turns on Blue Hills Avenue. When the Datsun emerged from Manchester Street onto Blue Hills Avenue, it was travelling in the opposite direction from the Jeep and the Oldsmobile.

As the Datsun passed the Jeep, Waite observed the defendant, seated in the back seat of the Datsun, point

a gun with a black barrel and a brown stock out of the car window and fire at the Jeep. Other witnesses also identified the defendant as the person who shot at the Jeep from the window of the Datsun. Waite ducked when he heard the shot, felt blood drip onto his head and then saw that blood was pouring down heavily from the victim's neck. The operator of the Jeep immediately pulled into the emergency entrance of Mt. Sinai Hospital seeking medical attention for the victim.

Emergency medical personnel responded and observed the victim slumped over in the back seat of the vehicle, bleeding profusely from a wound behind his left ear. The victim appeared not to be breathing, although a nurse from the emergency department of Mt. Sinai Hospital, was able to detect a carotid pulse. Hospital personnel removed the victim from the Jeep and brought him into the emergency room where they attempted unsuccessfully to resuscitate him. The victim died from a gunshot wound to the left side of his neck.

After a jury trial, the defendant was convicted of manslaughter in the first degree. The trial court sentenced the defendant to a term of twenty years imprisonment. This appeal followed.

I

The defendant first complains that the trial court improperly instructed the jury that the "law [was] made to protect society and innocent persons and not to protect guilty ones." He posits that the inclusion of this language in the charge implicates the defendant's rights to due process and a fair trial. We do not agree.

The defendant concedes that this claim was not preserved before the trial court, but seeks this court's review under the doctrine of State v. Evans, 165 Conn. 61, 327 A.2d 576 (1973), and State v. Golding, 213 Conn. 233, 567 A.2d 823 (1989).

To prevail on appeal on a claim of constitutional error, that has not been adequately preserved at trial, the defendant must meet all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 239–40. We are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case. *State* v. *Pinnock,* 220 Conn. 765, 778, 601 A.2d 521 (1992); *State* v. *Golding,* supra, 240; *State* v. *Dukes,* 29 Conn. App. 409, 421, 616 A.2d 800 (1992).

The defendant cannot satisfy the third prong of *Golding,* that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. The court's charge regarding the presumption of innocence, reasonable doubt and the notion that the law was made to protect society and innocent persons and not to protect the guilty are the same or similar to jury instructions that have been consistently approved by both the Supreme Court and this court.[2] See, e.g., *State*

---

[2] The trial court's charge involving the presumption of innocence was: "Thus, the presumption of innocence alone is sufficient to acquit the defendant. The presumption of innocence also requires that when you consider all of the evidence and it is capable of two reasonable interpretations, one of which is consistent with innocence, you must adopt the interpretation consistent with innocence."

The trial court's charge on the concept of reasonable doubt was: "[A] reasonable doubt means a doubt founded upon reason or common sense. As the words imply, it is a doubt held by a reasonable person after all the evidence in the case is carefully analyzed and presented. A reasonable doubt may arise not only from the evidence produced but from the lack of evidence. Since the burden is upon the State to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime charged,

v. *Stanley,* 223 Conn. 674, 695–96, 613 A.2d 788 (1992); *State* v. *Brown,* 199 Conn. 14, 28, 505 A.2d 690 (1986); *State* v. *Palmer,* 196 Conn. 157, 168–69, 491 A.2d 1075 (1985); *State* v. *Just,* 185 Conn. 339, 353, 441 A.2d 98 (1981); *State* v. *Harvey,* 27 Conn. App. 171, 190–92, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992); *State* v. *Spears,* 20 Conn. App. 410, 414–16, 567 A.2d 1245 (1989). The instructions as given, even where they deviated from previously approved language, did not, when viewed in the context of the entire charge, dilute the defendant's presumption of innocence or reduce in any way the obligation of the state to prove the defendant guilty beyond a reasonable doubt. See

a defendant has the right to rely on a failure of the prosecution to establish such proof. Reasonable doubt is the kind of doubt upon which reasonable persons such as yourselves in more serious affairs of your own lives would hesitate to act.

"On the other hand, if all of the evidence has been impartially and thoroughly reviewed by you and produces in your minds a settled and abiding belief that you would be willing to act upon it in matters of the highest importance relating to your own affairs, then in that event, you would be free from any reasonable doubt and should declare the defendant guilty. If, however, after considering all the evidence, you have a reasonable doubt as to the guilt of the defendant, you must find him not guilty. However, absolute certainty in the affairs of life is almost never attainable and the law does not require absolute certainty on the part of the jury before you return a verdict of guilty. The State does not have to prove guilt beyond all doubt, to a mathematical or to an absolute moral certainty. What the law does require, however, is that after hearing all the evidence, if there is something in that evidence or lack of it which leaves in your minds as reasonable men and women a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. If there is no reasonable doubt, then the accused must be found guilty. Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except guilt. It is consistent with guilt and inconsistent with any other reasonable conclusion. If you can, in reason, reconcile all the facts proved with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty.

"In the final analysis, a reasonable doubt is not a vague, speculative, imaginary something but is, as I have said, a kind of doubt as would cause reasonable men and women to hesitate to act upon in matters of importance to themselves. . . ."

*State* v. *Thomas,* 214 Conn. 118, 119–20, 570 A.2d 1123 (1990). The jury was properly and adequately informed that the defendant was presumed to be innocent and that the state bore the entire burden of proving each element of the crimes charged beyond a reasonable doubt. See id.

Because there was no clear deprivation of a fundamental constitutional right, we decline to review the defendant's claim relating to this assertion of the impropriety of the court's language regarding the purpose of the presumption of innocence. Id., 120; *State* v. *Golding,* supra.

## II

The defendant next asserts that the trial court improperly instructed the jury as to the meaning of the term reasonable doubt, depriving him of his rights guaranteed by both the state and the federal constitutions.[3] We note that the language about which the defendant complains, to the effect that a reasonable doubt is a doubt for which one can assign a reason, is not contained in the court's charge to the jury, but was stated by the court before the voir dire commenced. No claim is made that the trial court indicated in any way that the instructions given before the commencement of the voir dire were intended to substitute for the full charge given at the completion of the case. During the court's charge to the jury, the trial court emphasized that the jury must accept and apply the law as it was given to them in that charge.[4] "The jury, in the absence of a

---

[3] The defendant's attack on the trial court's charge concerning reasonable doubt encompasses four separate areas: (1) the two inference instruction; (2) the instruction concerning at what point the jury would be free of reasonable doubt; (3) the charge relating to the jurors having an abiding and settled belief as a measure of reasonable doubt; and (4) the charge that a reasonable doubt was a doubt for which the jurors could assign a reason.

[4] We also note that the charge to which the defendant now objects has been approved in a myriad of cases as a correct statement of the law even in the final charge itself. See, e.g., *State* v. *Thomas,* 214 Conn. 118, 119, 570 A.2d 1123 (1990); *State* v. *Ryerson,* 201 Conn. 333, 342–43 n.2, 514

fair indication to the contrary, and there is none here, is presumed to have followed the court's instructions." *State* v. *Woolcock,* 201 Conn. 605, 625, 518 A.2d 1377 (1986).

The defendant again concedes that this issue was not properly preserved before the trial court and seeks this court's review pursuant to the doctrine of *State* v. *Evans,* supra, and *State* v. *Golding,* supra. We conclude that the defendant cannot satisfy the third *Golding* prong requiring the defendant to establish that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding,* supra.

When examining a jury charge, we do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation. *State* v. *Fleming,* 198 Conn. 255, 268, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). We read the instructions as a whole to determine whether a reasonable possibility that the jury was misled by the charge exists. *State* v. *Castonguay,* 218 Conn. 486, 498, 590 A.2d 901 (1991); *State* v. *Dixon,* 28 Conn. App. 444, 447, 611 A.2d 432 (1992); *State* v. *Fernandez,* 27 Conn. App. 73, 84–87, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992). The test that we apply to any part of the charge is whether the charge as a whole presents the case to the jury in such a manner that no injustice is done. *State* v. *Derrico,* 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct.

A.2d 337 (1986); *State* v. *Leecan,* 198 Conn. 517, 538–39, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Findlay,* 198 Conn. 328, 346–48, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Derrico,* 181 Conn. 151, 170–71, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); *State* v. *Turner,* 24 Conn. App. 264, 273, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991).

789, 66 L. Ed. 2d 607 (1980); *State* v. *Kwaak,* 21 Conn. App. 138, 160, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990).

Reviewing the charge as a whole, we conclude that the charge properly and adequately instructed the jury as to the legal concept of reasonable doubt consistently with the common law of this state. Because the defendant cannot show that constitutional violations clearly exist and clearly deprived him of a fair trial, we will not review his claims. *State* v. *Golding,* supra; *State* v. *Dizon,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.