STATE OF CONNECTICUT *v.* MCKINLEY RAY
(10892)

DALY, LAVERY and HEIMAN, Js.

Argued December 3, 1992—decision released January 19, 1993

*Christopher Kriesen,* certified legal intern, with whom were *Timothy H. Everett* and *Laurie A. Hall,* certified legal intern, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom were *Cecilia B. Wiederhold,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the second degree in violation of General Statutes § 53a-56 (a),[1] as a lesser included offense of manslaughter in the first degree, and assault in the second degree in violation of General Statutes § 53a-60 (a) (2),[2] as a lesser included offense of assault in the first degree. The jury acquitted the defendant of the charges of tampering with a witness in violation of General Statutes § 53a-151, and threatening in violation of General Statutes § 53a-62 (a) (1). On appeal, the defendant asserts that the trial court improperly (1) refused the defendant's request to charge the jury on the lesser included offense of criminally negligent homicide, (2) instructed the jurors that they have the sworn duty to keep in mind that the presumption of innocence and the state's burden of proof beyond a reasonable doubt are rules of law made to protect the innocent and not the guilty,

---

[1] General Statutes § 53a-56 provides in pertinent part: "(a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[2] General Statutes § 53a-60 (a) provides in pertinent part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

and (3) instructed the jury as to the defendant's duty to retreat, thereby relieving the state of its burden of proving that the defendant knew he could retreat with complete safety. We disagree and affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On September 20, 1990, the defendant, McKinley Ray, and Arthur Aldrich were sitting on the front porch of their residence at 131 Portsea Street in New Haven. Sherie Walton and Jonathan Morris stood nearby. The defendant lived in the basement apartment at that address and Aldrich lived on the first floor. Walton accused Aldrich of stealing and wearing a pair of her pants. During the parties' argument, Walton's father arrived home inebriated. The defendant and Aldrich laughed as Walton's father stumbled, which angered Walton and Morris.

Walton's brother Amar (A.J.) approached the group as they argued. Morris stepped away from the argument, but subsequently returned with a brick, rock, or piece of concrete. He struck the defendant under his right eye. Aldrich and the defendant entered the front door and went into the hallway of Aldrich's apartment. A.J. and Morris followed them into the hallway. Fighting broke out among the four men. The defendant pulled out a pocket knife with a five inch blade and stabbed Morris and A.J. Morris and A.J. ran from the house and collapsed outside. Morris' body had six stab wounds, the fatal one being to his chest. That wound was three and one-half inches deep and penetrated his heart. A.J. survived at least six stab wounds, including one to the chest that injured a lung and another that lacerated his liver.

State Trooper Wilfredo Mercado arrived at the scene. After a bystander identified the defendant, the officer ordered the defendant to remain. Despite this order,

the defendant entered the side door to the residence and Mercado pursued him. Upon being apprehended, the defendant blurted out that he had used the knife because he had been hit in the face with a rock.

The defendant testified at trial and admitted to stabbing both victims. He claimed, however, that he acted in self-defense.

Prior to the conclusion of the evidence, the defendant filed requests to charge asking that the trial court charge the jury with respect to criminally negligent homicide as a lesser included offense. His request, however, did not set forth the factual predicate on which the claim to such a charge was based.[3] The trial court refused to give this instruction and the defendant excepted. The court stated that the defendant did "futilely file a request to charge on [criminally negligent homicide]. However, in review of the evidence involved in this matter and then in looking at the appropriate sections of the Practice Book I find I am not going to give that charge. I refer you to § 853 of the Practice Book and the evidence adduced at trial."[4]

---

[3] At sentencing, the defendant's counsel stated: "The court in this case asked both sides to submit their written instructions on requests to charge as early as we possibly could, and my recollection was that we did do that prior to the end of testimony in this case. I did. I believe that the state did also. The only reason I bring that to the court's attention right now is I just want the record to reflect that the reasons that my written request to charge did not state on the lesser included of assault third and criminally negligent homicide . . . the fact was that at that time the case had not come to conclusion yet and [the defendant] had not testified."

[4] Practice Book § 853 provides: "Written requests to charge the jury must be filed in triplicate with the clerk before the beginning of the arguments or at such earlier time during the trial as the court directs, and the clerk shall file them and forthwith hand one copy to the judicial authority and one to opposing counsel."

The state made a motion for articulation asking the court if it mistakenly referred to Practice Book § 853 instead of § 854, or, if the citation is accurate, did the court invoke Practice Book § 853 because the defendant's request was untimely. The trial court denied the request without explanation. No application for review was filed.

After a jury trial, the defendant was convicted of manslaughter in the second degree in violation of General Statutes § 53a-56 (a), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). The trial court sentenced the defendant to a total effective sentence of nine years imprisonment. This appeal followed.

## I

The defendant asserts that the trial court improperly refused the defendant's request to charge the jury on the lesser included offense of criminally negligent homicide.[5] He argues that he was entitled to that instruction pursuant to our Supreme Court's decision in *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980). We disagree.

A defendant is entitled to an instruction on a lesser included offense if he can demonstrate compliance with each of four conditions: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id., 588.

The state concedes that the defendant has satisfied the first and second prongs of *Whistnant.*[6] The state

---

[5] General Statutes § 53a-58 provides in pertinent part: "(a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person . . . ."

[6] The state asserts that the first condition is met because the defendant requested the trial court to instruct the jury regarding criminally negli-

did not challenge the defendant's "plainly deficient" request to charge.[7] We note, however, that this court is not bound by this concession. See *State* v. *Liebowitz,* 7 Conn. App. 403, 405, 509 A.2d 43 (1986). The defendant failed to meet the first *Whistnant* requirement; his request to charge was not an appropriate instruction. He requested an instruction on criminally negligent homicide, yet failed to recite the evidence that would support such a charge. His request to charge thus lacked the necessary factual predicate. See Practice Book § 854.[8] The record does not indicate that the defendant filed supplemental requests to charge that included the necessary factual underpinnings to support the charge of criminally negligent homicide, nor does it indicate that the trial court refused to accept additional requests to charge. The defendant has thus failed to comply with the first *Whistnant* requirement and we need not further examine this claim.

In light, however, of the state's concession to this patent deficiency and the well established principle that we decide cases on the theories on which they were tried and decided in the trial court, and briefed and argued in this court; *Pagani* v. *BT II, Limited Partnership,* 24 Conn. App. 739, 747, 592 A.2d 397, cert. dismissed, 220 Conn. 920, 593 A.2d 968 (1991); we will examine the defendant's other claims relating to this issue.

gent homicide. The second condition is satisfied under *State* v. *Rodriguez,* 180 Conn. 382, 407, 429 A.2d 919 (1980), in which our Supreme Court held that criminally negligent homicide is a lesser included offense of murder and manslaughter.

[7] The state asserts that "[a]lthough the defendant's request to charge is plainly deficient under the first *Whistnant* condition because it contains no reference to any facts . . . the state will not challenge this deficiency given trial counsel's representation at sentencing and the fact that neither the trial court nor the prosecutor took issue with the representation."

[8] Practice Book § 854 provides in pertinent part that each request to charge shall contain "a single proposition of law clearly and concisely stated with citation of authority upon which it is based, and the evidence to which the proposition would apply. . . ."

The state disputes that the defendant has satisfied the remaining two *Whistnant* conditions: (1) that the state or the defendant introduced some evidence justifying conviction of the lesser offense; and (2) that proof of the element or elements differentiating the lesser offense from the greater offense is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense, but guilty of the lesser included offense.

Manslaughter in the second degree under § 53a-56 (a) requires proof that the defendant "recklessly causes the death of another person." A person acts recklessly when he is "aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." General Statutes § 53a-3 (13). To be guilty of criminally negligent homicide, the defendant must with criminal negligence cause the death of another person. General Statutes § 53a-58. A person acts in a criminally negligent manner "when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists." General Statutes § 53a-3 (14). The difference between second degree manslaughter and criminally negligent homicide is the actor's state of mind. *State* v. *Burge,* 195 Conn. 232, 244, 487 A.2d 532 (1985); *State* v. *Rodriguez,* 180 Conn. 382, 403, 429 A.2d 919 (1980). Thus, in order for the defendant to have been entitled to an instruction on the lesser included offense of criminally negligent homicide, he must demonstrate that the evidence bearing on his state of mind was such that the jury reasonably could have found that he acted with criminal negligence, rather than with recklessness, with respect to Morris' death. See *State* v. *Montanez,* 219 Conn. 16, 22, 592 A.2d 149 (1991).

In conducting our examination as to whether the defendant has satisfied the conditions set forth in *Whistnant,* we view the evidence in the light most

favorable to the defendant's request for a charge on the lesser included offense. Id., 22–23; *State* v. *Herring,* 210 Conn. 78, 106, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). The evidence is "sufficiently in dispute where it is of such factual quality that would permit the [jury] reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal. . . . Nonetheless, jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on the evidence . . . from which inferences can be fairly drawn. . . . They should not [however] be encouraged to engage in speculation." (Citations omitted; internal quotation marks omitted.) *State* v. *Montanez,* supra, 23.

The defendant relies on the following evidence to support his assertion that the jury reasonably could have concluded that he acted in a criminally negligent, rather than reckless, manner with respect to Morris' death. The defendant testified that the hallway was dark when he flailed at Morris to keep him away. He also testified that while he knew that he struck Morris with the knife, he did not know if he injured Morris. He also asserts that the jury reasonably could have found that he was in a highly charged state of fear, that he acted out of terror, and that he thus failed to perceive the substantial and unjustifiable risk of death caused by his actions.

Taking all of the evidence in a light most favorable to the defendant, we conclude that the jury could not reasonably have concluded that the defendant acted with criminal negligence, rather than recklessness, with respect to Morris' death. The testimony at trial demonstrated that while the hallway was dark, visibility was

not impaired. The defendant stated that he could not see what Morris and A.J. were doing. Yet, he was able to distinguish the victims from Aldrich. He was also able to locate vulnerable areas of the victims' bodies. The forensic testimony dispels the defendant's claim that he blindly flailed at Morris. Morris had six stab wounds, one of which was the result of a plunge that penetrated the chest and pierced through the heart. Another wound went through Morris' arm and punctured his chest. Rational jurors using common sense could not reasonably have found that the defendant did not perceive a substantial risk of death when he stabbed Morris with sufficient force to penetrate his chest and heart. The evidence was thus not sufficiently in dispute to support a finding of criminally negligent conduct, but would have supported only a conclusion of reckless conduct.

Because of the defendant's failure to satisfy the first *Whistnant* requirement and the lack of evidence to justify a conviction of criminally negligent homicide in violation of General Statutes § 53a-58, the trial court correctly refused to include in its charge criminally negligent homicide as a lesser included offense of manslaughter in the first degree.

## II

The defendant also asserts that the trial court improperly instructed the jurors that it was their "sworn duty" to "keep in mind" that the presumption of innocence and the state's burden of proof beyond a reasonable doubt are rules "made to protect the innocent and not the guilty." We do not agree.

The trial court twice discussed the principles of the presumption of innocence and the state's burden of proof beyond a reasonable doubt. This occurred early in the charge before instructing the jury on the offenses and again at the end of the charge when the jurors were

about to retire to deliberate. The defendant concedes that the court accurately instructed the jury in the earlier portion of the charge.[9] He challenges, however, the later portion of the charge. The court stated: "It is the sworn duty of the courts and jurors to safeguard the rights of persons charged with a crime by respect-

[9] The trial court instructed the jury that: "[The defendant] is presumed to be innocent until the time he is proven guilty beyond a reasonable doubt. And this means that at the time the accused was presented for trial before you he stood before you free from any bias or prejudice or any burden arising from his position as the accused. So far as you are concerned, he then was innocent until such time as the evidence and the matters produced here in the orderly conduct of the case satisfy you beyond a reasonable doubt that he is guilty. In short, so far as you're concerned, this accused is innocent of the crimes here charged unless and until the evidence produced before you in this court satisfies you of his guilt beyond a reasonable doubt. . . . [I]f a piece of evidence that has been presented here when considered in light of all of the evidence is capable of two reasonable constructions, one of which is consistent with guilt and the other with innocence, it is to be given that construction of innocence.

"Now the accused does not have to prove to you that he did not commit the offenses with which he is charged. But the state must prove that he did, and to prove that it must prove every essential element going into the making up of each offense as charged beyond a reasonable doubt. . . . The state can sustain the burden of proof resting upon it only if the evidence before you has established the existence of every element constituting the offense beyond a reasonable doubt."

The court then instructed the jury about the concept of reasonable doubt stating: "You probably are wondering what [reasonable doubt] means under the law. Now a reasonable doubt is a doubt that is based upon a reason and grows out of the evidence or the lack of evidence in the case. A reasonable doubt is not such a doubt as may be raised by one questioning merely for the sake of raising a doubt. It is not a surmise, a guess, a conjecture. It is not a hesitation springing from any feeling of sympathy or pity for the accused or for any other person or persons who might in any way be affected by your decision. It is a doubt that is reasonable in the light of the evidence that is honestly entertained by a juror after a fair comparison and careful examination of the entire evidence in the case. It is a doubt for which you in your own minds consciously find a reason. . . . The state of Connecticut does not desire the conviction of an innocent person nor any person who is presented on evidence where there is a reasonable doubt. The state does not wish to have an innocent person punished or have a guilty person acquitted. . . ."

ing the presumption of innocence by making the state meet its burden of proving the defendant guilty beyond a reasonable doubt, *but you must keep in mind that these rules of law are made to protect the innocent and not the guilty.* If and when the presumption of innocence has been overcome by the evidence and you find, if you do so find, as to the applicable charges that the defense of justification or self-defense is not applicable, if you do so find, then it is your duty to find the defendant guilty of the appropriate charges." (Emphasis added.) The defendant also concedes that this claim was not preserved before the trial court, but seeks this court's review under the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

To prevail on appeal on a claim of constitutional error, that has not been adequately preserved at trial, the defendant must meet all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "We are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." *State* v. *Andrews,* 29 Conn. App. 533, 537, 616 A.2d 1148 (1992).

The defendant cannot satisfy the third prong of *Golding,* that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. The court's instructions concerning the presumption of innocence, reasonable doubt and the concept that the law was made to protect society and innocent persons and not to protect the guilty are the same or similar to jury instructions that have been consistently

approved by this court and our Supreme Court. See, e.g., *State* v. *Stanley,* 223 Conn. 674, 695–96, 613 A.2d 788 (1992); *State* v. *Thomas,* 214 Conn. 118, 119–20, 570 A.2d 1123 (1990); *State* v. *Andrews,* supra, 537–38. The instructions that the law was designed to "protect the innocent and not the guilty" did not, when viewed in the context of the entire charge, dilute the defendant's presumption of innocence or lessen the state's burden to prove the defendant guilty beyond a reasonable doubt. *State* v. *Thomas,* supra, 119; *State* v. *Andrews,* supra, 538. Because the defendant was not deprived of a fundamental constitutional right, we decline to review the defendant's claims concerning the allegedly improper language used by the court in its instructions to the jury. See *State* v. *Thomas,* supra, 120; *State* v. *Andrews,* supra, 539.

### III

The defendant further posits that the jury instructions on the duty to retreat relieved the state of its burden of proving that the defendant knew that he could retreat with complete safety.[10] At trial, the defendant failed to object to the trial court's instruction concerning self-defense.[11] The defendant concedes that this claim was not preserved before the trial court, but seeks

---

[10] In charging the jury on the issue of self-defense, the trial court instructed the jury that the defendant "may justifiably use deadly force if he reasonably believes that the other person is using or about to use deadly physical force, or secondly, the other person or persons was about to inflict great bodily harm upon him. The law does not encourage the use of deadly force *and in most circumstances a person must retreat from the perceived harm about to be inflicted upon him.* However, here we have the testimony, and it is up to you to believe or not, as to how the defendant, with the other witness, went into the kitchen. That is up to you to decide." (Emphasis added.)

[11] The state argues that the defendant not only failed to object to the instruction concerning self-defense, but, in fact, endorsed the instruction by stating, "I will tell the court I think the court gave a very fair charge on justification . . . ."

this court's review under the doctrine of *State* v. *Golding,* supra. The defendant asserts that a constitutional violation clearly exists and clearly deprived him of a fair trial. He also asserts that the state cannot prove the harmlessness of the constitutional violation beyond a reasonable doubt. We are unpersuaded that a *Golding* review is warranted.

When examining a trial court's instructions to a jury, we "do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation." *State* v. *Andrews,* supra, 540; *State* v. *Wolff,* 29 Conn. App. 524, 531, 616 A.2d 1143 (1992). We consider the instructions as a whole to determine whether there is a reasonable possibility that the jury was misled by the charge. *State* v. *Castonguay,* 218 Conn. 486, 498, 590 A.2d 901 (1991); *State* v. *Andrews,* supra. "Jury instructions need not be exhaustive, perfect or technically accurate. . . . They must be correct in law, adapted to the issues presented in the case and sufficient to guide the jury in reaching a verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Wolff,* supra.

Reviewing the charge as a whole, we conclude that the trial court's instructions to the jury were accurate and sufficient to guide them in reaching their verdict. In its charge, the court discussed at length the law regarding self-defense. It informed the jury that the state must prove beyond a reasonable doubt that the defendant did not act in self-defense. The court read verbatim the elements and justifications for the use of self-defense and deadly force. See General Statutes §§ 53a-19, 53a-100. After correctly stating the law concerning the duty to retreat,[12] the court added that

---

[12] See footnote 10, supra.

"[t]he defendant is not required to retreat if he is in his home or dwelling." Because the defendant cannot show that the trial court's charge on self-defense clearly deprived him of a fair trial, we will not review his claims. *State* v. *Golding,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.