STATE OF CONNECTICUT *v.* KENDALL HOOKS
(10650)

LAVERY, HEIMAN and FREEDMAN, Js.

Argued December 10, 1992—decision released February 2, 1993

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *James E. Thomas,* senior assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1),[1] conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a)[2] and 53a-59 (a) (1),[3] and assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1)[4] and 53a-8.[5] The defendant was acquitted of a charge of weapons in a motor vehicle in violation of General Statutes § 29-38. On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of the crime of assault in the first degree because the victim's injury was not proven beyond a reasonable doubt to have been a serious physical injury, (2) he could not have been convicted of the crime of conspiracy because the evidence disclosed that the act committed was unintended, (3) the trial court improperly refused to charge the jury on the lesser included offenses of criminally negligent homicide and accessory to criminally negligent homicide, (4) the trial court

---

[1] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument . . . ."

[4] See footnote 3, supra.

[5] General Statutes § 53a-8 provides in pertinent part: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

improperly refused to give a jury charge on the evaluation of an accomplice's testimony, and (5) the trial court's instructions on circumstantial evidence and inferences violated the defendant's rights to due process of law and the right to present a defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 9, 1990, Hartford police officers were dispatched to the area of Kensington and Hampton Streets in the Stowe Village housing project on a report that a person had been shot. The officers found Corretta Pratt, a fifteen year old female, lying on the pavement, not breathing, and lacking a pulse. A post mortem examination revealed that she had sustained three gunshot wounds. These gunshots, fired from a .38 caliber weapon, injured her heart and liver and were sufficient to have caused her death. The officers also observed a trail of blood and followed it to the rear of 64 Hampton Street. Although they found no victim there, the officers' subsequent investigation revealed that Chad Adger, who had been shot in the same incident that took Pratt's life, had been taken to the hospital.

On the evening of the shootings, Ralph Gilliard and several other persons including the two victims were standing at the corner of Kensington and Hampton Streets when they observed a passing Oldsmobile automobile that was occupied by several people wearing black hooded sweatshirts. Several minutes later, the vehicle returned. Shots were fired from the rear passenger side of the car. Pratt was shot several times and died as a result of the gunshots. Adger suffered a graze wound to his face and was shot in the left ring finger leaving it dangling by a thread. The injury to his finger required surgery and resulted in a scar and some loss of function.

Both Gilliard and Adger later identified a vehicle found parked on Enfield Street as the one from which the shots had been fired. Adger based his identification of the car on the fact that the right front hubcap was missing. The vehicle, a two door burgundy Oldsmobile 98, was owned by Anthony Harris. On April 9, 1990, he loaned the car to Larry Jenkins who, in turn, loaned it to Mike Butler.

Prior to the shooting, several members of the "Garden Street Posse," including the defendant, were standing around on Garden Street talking. They discussed their dissatisfaction with certain actions of some Stowe Village residents. As a retaliatory action for the throwing of a garbage can at the car of one of the member's grandfather, some of the members of the posse were going to Stowe Village and "shoot it up." Mike Butler, Derrick Allen, Gregory Butler, two Jamaican youths and the defendant were in the car when it left Garden Street to go to Stowe Village. In their possession they had two .38 caliber weapons as well as a .32 caliber weapon and a sawed-off shotgun. The defendant had possession and control of one of the .38 caliber weapons. Pratt was killed by a .38 caliber bullet.

On the day following the incident, the defendant stated that he hoped that the guns had been thrown away. He also stated to Keith Wilson that he had been trying to shoot "Sammy," but that he had missed. He also told Wilson that if the police became aware of his involvement "he would have to do time."

The defendant gave four separate and somewhat conflicting statements to the police. In his statement of May 1, 1990, he stated that his friends were angry about an incident that had occurred at Stowe Village but disclaimed any involvement in the shootings. He claimed that he had left to visit his girl friend. On October 4, 1990, he was again interviewed by the police.

In that interview he stated that his statement of May 1, 1990, was not truthful. He admitted that he had been in the car when the shots were fired but that neither he nor Allen had fired any weapons. He claimed that "Jamaica Mickey" had fired the shots. On October 9, 1990, the defendant was again interviewed by the police. On this occasion, he named all of the people who had been in the car on the day of the incident, and again claimed that "Jamaica Mickey" had opened fire into a crowd of people. In the same interview, he also stated that they had gone to Stowe Village to find some people with whom they had been fighting for the purpose of engaging in a fistfight, but that "Jamaica Mickey" and another person were armed. Finally, on October 18, 1990, the defendant stated that both "Jamaica Mickey" and Mike Butler had guns, but that he was only sure that "Jamaica Mickey" had fired. He was not able to tell whether Butler had fired.[6]

I

The defendant first claims that the evidence produced at trial was insufficient for the jury to find that the defendant, with intent to cause serious physical injury to another person, caused such injury by means of a deadly weapon or a dangerous instrument. General Statutes § 53a-59 (a) (1). The defendant posits that the evidence is deficient in several respects. First, he claims that the victim was, at the time of trial, pain free from the finger injury. Second, he asserts that after undergoing physical therapy, the victim reinjured his finger while playing basketball. While he concedes that the evidence demonstrated that the victim does not have full use of his left hand ring finger because it does not bend, and because it cannot be straightened from a forty-five degree angle, he asserts that the evidence does not support a conclusion that this disability

---

[6] Additional facts will be set forth where they are relevant to each issue.

resulted from the shooting injury but could have been caused by the subsequent basketball injury. The basis upon which he makes this claim is his assertion that the victim testified only that the appearance of the finger at the time of trial was the same as when he left the hospital. The defendant interprets that to limit the evidence to a scar half the size of a dime a half inch below the knuckle as the only sequelae from this shooting. We do not agree and conclude that the evidence was sufficient to support the jury finding.

Our review of the evidence reveals that Adger testified that his left ring finger had been shot and was hanging off, attached only by some bone and skin. Additionally, he testified that prior to the incident, his left ring finger appeared the same as did the right ring finger, and he displayed both his left and right ring fingers to the jury. The evidence also revealed that he was unable to straighten completely or bend his left ring finger. It was bent from the middle knuckle at approximately a forty-five degree angle. Adger also testified that he had reinjured his left ring finger playing basketball, but that the left ring finger still looked the same as it had looked after his discharge from the hospital and before it was injured in the basketball game.

To determine whether the evidence was sufficient to justify a conviction, we first construe the evidence in the light most favorable to sustaining the verdict. *State v. Cruz,* 28 Conn. App. 575, 578, 611 A.2d 457 (1992). We then determine whether, "from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." *State v. Uribe,* 14 Conn. App. 388, 393, 540 A.2d 1081 (1988). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . ." (Citations omitted; internal quotation

marks omitted.) *State* v. *Somerville,* 214 Conn. 378, 390, 572 A.2d 944 (1990); *State* v. *Maxwell,* 29 Conn. App. 704, 708, 618 A.2d 43 (1992). "It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Maxwell,* supra.

It is the sole province of the jury as the trier of fact to draw reasonable and logical inferences from the facts that they find. *State* v. *Gray,* 221 Conn. 713, 721, 607 A.2d 391, cert. denied, U.S. , 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). It is also the jury's exclusive province to weigh the conflicting evidence and determine the credibility of the witnesses. *State* v. *Pinnock,* 220 Conn. 765, 778, 601 A.2d 521 (1992); *State* v. *Lago,* 28 Conn. App. 9, 31, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 828 (1992).

The test for determining whether the evidence is sufficient to sustain a verdict is thus "whether the [trier] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Haddad,* 189 Conn. 383, 387–88, 456 A.2d 316 (1983); *State* v. *Cruz,* supra, 578–79.

To have found the defendant guilty of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), the jury would be required to find beyond a reasonable doubt that the defendant, with the intent to cause a serious physical injury to another person, caused such injury by means of a deadly weapon or dangerous instrument. A serious physical injury is statutorily defined as a "physical injury which creates a substantial risk of death, or which causes serious dis-

figurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." General Statutes § 53a-3 (4).

"The degree of the injuries suffered by [the victim] was a proper question for the jury to decide if sufficient evidence were introduced. . . . While the distinction between serious physical injury and physical injury is elusive; [t]he determination as to whether the victim's injuries were serious physical injuries was properly a question for the jury. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Woodward*, 11 Conn. App. 499, 503–504, 528 A.2d 404, cert. denied, 205 Conn. 802, 531 A.2d 940 (1987).

The jury had before it evidence that as a result of a gunshot the victim's left ring finger was hanging off, that he was admitted to a hospital and underwent surgery for the repair of the injured finger, that he was hospitalized for a four day period, and that he underwent an extensive course of physical therapy that lasted about two months after his discharge from the hospital. The jury also had before it evidence that when the victim was discharged from the hospital, he did not have full use of his left ring finger and that a year after his injury the victim still lacked the full use of the finger in that he was unable to bend the finger or straighten it out completely. Further, the jury had before it evidence that the finger was bent at an angle of approximately forty-five degrees and that there was a small scar on the left ring finger. We conclude that the evidence presented was sufficient to support a finding that the victim's injury was a serious physical injury. See *State* v. *Allen*, 28 Conn. App. 81, 89–90, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992); *State* v. *Dickson*, 10 Conn. App. 462, 465, 523 A.2d 935 (1987).

The defendant's claim that the evidence against him was insufficient on the issue of the existence of a serious physical injury suffered by the victim is thus without merit.

## II

The defendant next claims that he was improperly convicted of the crime of conspiracy to commit assault in the first degree because there was no evidence from which a jury could find that the defendant intended that Adger be seriously injured. The defendant posits that his conviction on the count charging him with conspiracy resulted in his having been found guilty of having accomplished an accidental or unintended result. We are not persuaded.

We first turn to an examination of the nature of the crime of conspiracy. Conspiracy has long been recognized as an offense separate and distinct from the commission of the substantive offense. *In re Luis R.,* 204 Conn. 630, 637, 528 A.2d 1146 (1987). "The commission of the substantive offense and a conspiracy to commit it are separate and distinct crimes. . . . The crime of conspiracy is dependent on clear principles, and has characteristics and ingredients which separate it from all other crimes." (Citations omitted; internal quotation marks omitted.) Id.

To prove the crime of conspiracy, in violation of § 53a-48, the state must establish beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy. *State* v. *Rouleau,* 204 Conn. 240, 258, 528 A.2d 343 (1987); *State* v. *Estrada,* 28 Conn. App. 416, 420, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992). The state is also obligated to prove that the accused intended the conduct constituting a crime be

performed. *State* v. *Rouleau,* supra; *State* v. *Channer,* 28 Conn. 161, 168, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992). "The gravamen of the crime of conspiracy is the unlawful combination and an act done in pursuance thereof, not the accomplishment of the objective of the conspiracy." (Internal quotation marks omitted.) *State* v. *Rouleau,* supra. "Conspiracy is an inchoate offense the essence of which is an agreement to commit an unlawful act. . . . The prohibition of conspiracy is directed not at the unlawful object, but at the process of agreeing to pursue that object. . . . Conspiracy is an anticipatorial offense distinguished by a corrupt agreement by two or more persons to commit a specific objective crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Beccia,* 199 Conn. 1, 3, 505 A.2d 683 (1986).

Here, the object of the conspiracy was to commit assault in the first degree. The jury had before it sufficient evidence to support that finding. In furtherance of the conspiracy, the conspirators armed themselves with weapons and went to Stowe Village for the purpose of carrying out the object of the conspiracy. The jury properly could find that these actions constituted an overt act in pursuance of the conspiracy. Thus, the crime of conspiracy was completed when the defendant and others ventured into Stowe Village with weapons for the purpose of carrying out the crime. To commit the crime of conspiracy, the defendant did not need to successfully carry out the objective of the conspiracy. *State* v. *Ghere,* 201 Conn. 289, 300, 513 A.2d 1226 (1986).

The defendant's reliance on the fact that he was convicted of accessorial liability on the charge of assault in the first degree is unavailing. "[T]he accessory statute merely provides alternate means by which a substantive crime may be committed." (Internal quotation

marks omitted.) *In re Luis R.*, supra; *State* v. *Gamble*, 27 Conn. App. 1, 9, 604 A.2d 366, cert. denied, 222 Conn. 901, 606 A.2d 1329 (1992). It has long been established in Connecticut that no crime of being an accessory exists. *In re Luis R.*, supra. Here, the jury clearly was convinced that the defendant intentionally aided another person in committing an assault in the first degree. The evidence clearly supported such a conclusion and the defendant was not convicted of a conspiracy to bring about an unintended result but was properly convicted of the crime of conspiracy to commit assault in the first degree. The defendant's claim to the contrary is without merit.

## III

The defendant next asserts that the trial court improperly refused to grant his request that it charge the jury on the crime of criminally negligent homicide; General Statutes § 53a-58; as a lesser included offense of the crime of manslaughter in the first degree[7] and his further request that the court charge on accessorial liability as an alternate method of committing that crime. We disagree.

To establish entitlement to charge on a claimed lesser included offense, the defendant must meet the four requirements established by our Supreme Court that, "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, intro-

---

[7] The defendant's request to charge with respect to criminally negligent homicide provides: "1. Defendant respectfully requests that the offense of Criminally Negligent Homicide C.G.S. § 53a-58 and Accessory to Criminally Negligent Homicide, under C.G.S. § 53a-8 and C.G.S. § 53a-58, be charged as lesser included offenses of Count One of the Information. *State* v. *Whistnant*, 179 Conn. 576, [427 A.2d 414] (1980)."

duced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). Thus, failure of the defendant to meet all four requirements results in a lack of entitlement to a lesser included offense charge. Id.; *State* v. *Ray,* 30 Conn. App. 95, 100, 619 A.2d 469 (1993).

The request filed by the defendant clearly fails to satisfy the first requirement of *State* v. *Whistnant,* supra, because it does not meet the appropriate instruction test. Practice Book § 854 sets forth the requirements for an appropriate request to charge. Each request to charge shall contain "a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply.*" (Emphasis added.) Practice Book § 854. Here, the request to charge was rendered inappropriate by the failure of the defendant to meet the bare minimum standard set forth in Practice Book § 854. The request did not set forth a clear and concise proposition of law, nor did the defendant supply to the court the requisite factual predicate necessary to support his request. *State* v. *Whistnant,* supra.

Since the defendant cannot meet the first prong of *Whistnant,* his claim that the trial court improperly failed to comply with his request to charge is without merit.

## IV

The defendant next asserts that the trial court improperly failed to comply with his request that the

charge include the issue of the special considerations applicable to accomplice testimony.[8] We disagree.

The trial court has the duty to "instruct the jury to scrutinize carefully the testimony of an accomplice of the defendant when the evidence so warrants." *State* v. *Boles,* 223 Conn. 535, 551, 613 A.2d 770 (1992); *State* v. *Shindell,* 195 Conn. 128, 142, 486 A.2d 637 (1985). The court's duty to so charge is implicated only where the trial court has before it sufficient evidence to make a determination that there is evidence that the witness was in fact an accomplice. See *State* v. *Smith,* 16 Conn. App. 223, 227–28, 547 A.2d 102 (1988).

"An accomplice is one who, acting with the mental state required for the commission of an offense, solicits, requests, commands, importunes or intentionally aids another person to engage in conduct that constitutes an offense. General Statutes § 53a-8. In addition to criminal intent, an accomplice must also possess community of unlawful purpose or 'a sort of partnership in purpose and conduct.' " *State* v. *Polanco,* 26 Conn. App. 33, 43, 597 A.2d 830, cert. denied, 220 Conn. 926, 598 A.2d 367 (1991).

---

[8] The defendant's request to charge on the issue of the testimony of accomplices is as follows: "6. Certain of the witnesses by their own testimony participated in the criminal conduct charged by the state in this case. They are what the law calls accomplices. In weighing the testimony of an accomplice, who is a self-confessed criminal, you must consider that fact. All else being equal, it may be that you would not believe a person who has committed a crime such as this, involving moral wrong, as readily as you would believe a person of good character. The amount of moral wrong involved in the participation of the witness in the crime should be weighed. Also, in weighing the testimony of an accomplice who has not yet been sentenced or whose case has not yet been disposed of, or who has not been charged with offenses of which the state has evidence, you should keep in mind that he may, in his own mind, be looking or hoping for some favorable treatment in the sentence or disposition of his o[w]n case, and that, therefore, he may have an interest in the outcome of this case that his testimony may have been colored by that fact. Therefore, the jury must look with particular care at the testimony of an accomplice and scrutinize it very carefully before you accept it. Connecticut Practice, Borden & Orland § 3.9."

Our review of the evidence discloses that the trial court had nothing before it to support a factual finding that the witness, Lindsay, had acted as an accomplice or that he had any involvement in the commission of the crimes with which the defendant stood charged. See id. The evidence viewed in the light most favorable to the defendant; *State* v. *Fuller,* 199 Conn. 273, 275, 506 A.2d 556 (1986); does not support a conclusion that the defendant was entitled to an accomplice testimony charge. While he testified that he was a member of the Garden Street posse and that he had been hanging around on Garden Street on the day of the shooting, no evidence demonstrated that he participated in the preparation for, or the execution of the defendant's crimes. There was evidence that Lindsay had used the Oldsmobile to go home and change his clothes. The evidence also indicates that he returned the car to Garden Street and gave the keys to Mike Butler, who, along with the defendant and others then left Garden Street in the car. Lindsay did not accompany them. No evidence connected Lindsay with the preparation of the weapons or any knowledge of the guns. In short, the evidence did not support the defendant's claim that Lindsay was an accomplice.

Absent evidence sufficient to offer support for the theory that Lindsay was an accomplice, the defendant was not entitled to the charge that he sought. On the evidence before it, the trial court properly declined to give an accomplice testimony charge. See *State* v. *Boles,* supra, 551–52.

## V

The defendant next claims that the trial court's instructions regarding the drawing of inferences from circumstantial evidence violated his right to due process and his right to present a defense. He asserts that the trial court should have sua sponte discriminated

between inferences favorable to the state and those favorable to the defendant. In short, he proposes that the trial court instruct on two separate standards regarding the use of inferences. We decline this invitation to further complicate this standard to the detriment of defendants.

The defendant concedes that he did not properly preserve this claim for review, and thus seeks review under the aegis of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). To prevail on appeal on a claim of constitutional error that has not been properly preserved at trial, the defendant must meet all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40; *State* v. *Ray,* supra, 105. "We are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." *State* v. *Andrews,* 29 Conn. App. 533, 537, 616 A.2d 1148 (1992). We conclude that the defendant cannot satisfy the fourth prong of *Golding,* namely, that when the alleged constitutional violation is subjected to a harmless error analysis, the state is unable to demonstrate harmlessness beyond a reasonable doubt. *State* v. *Willis,* 24 Conn. App. 678, 682, 591 A.2d 445 (1991), aff'd, 221 Conn. 518, 605 A.2d 1359 (1992).

This same claim has been previously advanced and rejected in a number of cases. See, e.g., *State* v. *Jackson,* 28 Conn. App. 721, 613 A.2d 846 (1992); *State* v. *Tinsley,* 24 Conn. App. 685, 591 A.2d 448, cert. denied, 220 Conn. 902, 593 A.2d 968 (1991); *State* v. *Willis,*

supra. Here, the defendant offered no affirmative defense. The issues before the jury were fact bound, involving the credibility of witnesses and the identification of the defendant as one of the participants in the commission of the crimes. The trial court properly charged the jury on the presumption of innocence afforded to the defendant and the state's burden to prove each element of the crime beyond a reasonable doubt. Further, the fact that the defendant bore no burden of proof in any regard was clearly explained to the jury. Our courts have held that an instruction, similar to the one now contested by this defendant, risks confusing the jury to the detriment of the defendant and lessening the burden of proof that the law casts upon the state. *State* v. *Ortiz,* 217 Conn. 648, 668–69, 588 A.2d 127 (1991); *State* v. *Rivera,* 24 Conn. App. 670, 676, 591 A.2d 440, cert. denied, 219 Conn. 914, 593 A.2d 139 (1991).

We conclude that the defendant has failed to satisfy the fourth prong of *Golding,* and therefore decline review of this claim.

The defendant also attacks the trial court's charge that each fact leading to the drawing of an inference had to be proven beyond a reasonable doubt. The defendant claims that the trial court's use of the phrase, "each fact" necessarily implicated all facts upon which the defendant relied and that the charge was thereby rendered defective. We are not persuaded.

We have already set forth our review of the charge insofar as it relates to the burden of proof and the presumption of innocence. While we note that the trial court's charge that each fact leading to an inference must be proven beyond a reasonable doubt was incorrect; *State* v. *Tinsley,* supra, 689; *State* v. *Rivera,* supra, 677; the charge as given benefited the defendant by increasing the state's burden to require it to prove each

fact beyond a reasonable doubt before an inference could be drawn. Our review convinces us that the error was harmless beyond a reasonable doubt. *State* v. *McDonough,* 205 Conn. 352, 355–56, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). Thus, the defendant's claim fails to satisfy the fourth prong of *Golding.*

The judgment is affirmed.

In this opinion the other judges concurred.