STATE OF CONNECTICUT *v.* MCKINLEY RAY
(14741)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued October 29—decision released December 21, 1993

*Timothy H. Everett,* with whom were *Thomas Nolan,* certified legal intern, and, on the brief, *Christopher Kriesen,* certified legal intern, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Cecelia B. Wiederhold,* assistant state's attorney, for the appellee (state).

BERDON, J. The defendant, McKinley Ray, was charged in separate counts with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and (3).[1] After a jury trial, the defendant was convicted

---

[1] General Statutes § 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or  . . .  (3) under circumstances evincing an

of the lesser included offense of manslaughter in the second degree in violation of General Statutes § 53a-56 (a).[2] The sole issue in this appeal is whether the trial court improperly refused the defendant's request to instruct the jury on the lesser included offense of criminally negligent homicide, pursuant to General Statutes § 53a-58.[3] In *State* v. *Ray*, 30 Conn. App. 95, 619 A.2d 469 (1993), the Appellate Court upheld the trial court's refusal to give the requested instruction. The defend-

extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

In addition to the two counts of manslaughter in the first degree, the state charged the defendant with the following four additional counts: separate counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (3), one count of tampering with a witness in violation of General Statutes § 53a-151, and one count of threatening in violation of General Statutes § 53a-62 (a) (1).

[2] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

General Statutes § 53a-3 provides in relevant part: "(13) A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ."

The jury acquitted the defendant of all six of the charged offenses. In addition to manslaughter in the second degree, the defendant was also convicted of assault in the second degree in violation of General Statutes § 53a-60 (a) (2) as a lesser included offense of assault in the first degree. That conviction is not before us in this appeal.

[3] General Statutes § 53a-58 provides in relevant part: "(a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person . . . ."

General Statutes § 53a-3 provides in relevant part: "(14) A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

ant then petitioned this court and we granted certification.[4] We conclude that the defendant's request should have been granted and therefore reverse the judgment of the Appellate Court.

The jury reasonably could have found the following facts. At approximately 7 p.m. on September 20, 1990, the defendant and Arthur Aldrich were sitting and talking on the front porch of their residence at 131 Portsea Street in New Haven. The defendant lived in the basement apartment at that address and Aldrich lived on the first floor. After they had been talking for half an hour, Sherie Walton, who lived on the second floor, appeared and began arguing with Aldrich. Jonathan Morris also appeared and began arguing with the defendant. Apparently, Walton's father had arrived home inebriated, and the defendant and Aldrich had laughed at him and another man as they stumbled up the stairs. Their laughter had angered Walton and Morris. In addition, Walton had accused Aldrich of stealing and wearing a pair of her pants.

Walton's brother, Amar (A.J.), approached the group and then joined in the argument. At some point, Morris stepped away from the argument and then returned with a brick, rock, or piece of concrete. He struck the defendant under his right eye with the object, causing the defendant to bleed. The defendant told A.J. that he did not want any trouble. Aldrich helped the defendant, who was woozy and staggering, through the front door of the building and down a dark, narrow hallway to the first floor kitchen.

A.J. and Morris, neither of whom lived in the building, forced their way through the front door and into

[4] Certification was limited to the following issue: "Did the Appellate Court properly conclude that the evidence of the defendant's state of mind was not sufficiently in dispute so as to entitle him to a lesser included offense charge regarding criminally negligent homicide?" *State* v. *Ray,* 225 Conn. 919, 625 A.2d 822 (1993).

the hallway. The defendant and Aldrich went back into the hallway, where fighting broke out among the four men. At some point, the defendant pulled out a pocket knife with a five inch blade that he used to open boxes at work. He stabbed Morris and A.J., who then ran from the house and collapsed outside. Morris, who was stabbed four times,[5] died as a result of a wound that penetrated three and one-half inches into his chest and heart. A.J. was stabbed several times but survived.

The defendant, who testified at trial, admitted to stabbing both victims but claimed that he had been frightened and had acted in self-defense. He stated that Morris had been swinging a brick at him in the hallway, causing glancing blows to the defendant's head. Further, he testified that although he knew that he had stabbed Morris, Morris had continued fighting and the defendant did not know where or how many times he had stabbed Morris or whether Morris had been injured. Similarly, while the defendant knew that he had stabbed A.J., A.J. had continued fighting and the defendant did not know where or how many times he had stabbed him. Edward T. McDonough, the medical examiner who performed the autopsy on Morris, testified that Morris was stabbed three times in the right arm or shoulder and once in the chest, and that only the chest wound was life-threatening. McDonough stated that Morris' wounds were consistent with the defendant flailing at him with the knife while Morris was moving around.[6]

---

[5] Although Morris was stabbed four times, he sustained six separate wounds.

[6] McDonough testified as follows:

"[Edward McDonough:] [E]ssentially all three [of the nonfatal] wounds were on the back side of the right arm.

"[Defense Counsel:] Okay. None of the other ones other than the chest wound were in the front of Mr. Morris, correct?

"A. That's correct.

"Q. They were either in the back portion or on the side of him.

Before the defendant testified, the trial court requested counsel to file written requests to charge. The defendant did so, specifically requesting the trial court to charge the jury with respect to criminally negligent homicide as a lesser included offense of manslaughter. The trial court refused to give this instruction and the defendant excepted.

The jury found the defendant guilty of the lesser included offenses of manslaughter in the second degree in violation of General Statutes § 53a-56 (a), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). The trial court sentenced the defendant to a total effective sentence of nine years imprisonment.

In *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), we held that a defendant is entitled to an instruction on a lesser included offense if he can demonstrate compliance with each of four conditions: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first com-

---

"A. That's correct.

"Q. Now wouldn't that indicate to you, Doctor, that the motion that was used to do this was sort of a flailing-type motion and not one that was directed at any one area of the body?

"A. There could be many different scenarios as to how these wounds could be inflicted. I would have to be presented with a story or a hypothetical and I could see whether that was consistent or inconsistent with my finding.

"Q. Let's assume hypothetically, Doctor, that the person who incurred the injury was moving significantly prior to and during the stabbing, okay, his body was not in still motion. It was in perpetual motion. Would then it be consistent with a flailing-type motion and not one directed at one area only?

"A. I am not quite sure what you mean by, flailing, but in general the answer to your question is, yes. Since there are wounds to several different portions of the body although being not the same side of the body it could, it would be consistent with the individual, the deceased in this case, having been moving."

mitted the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.'' The state conceded before the Appellate Court that the defendant had satisfied the first two prongs of *Whistnant*.[7] The

---

[7] The second prong is satisfied under *State* v. *Rodriguez*, 180 Conn. 382, 407, 429 A.2d 919 (1980), in which we held that criminally negligent homicide is a lesser included offense of manslaughter. See also *State* v. *Edwards*, 214 Conn. 57, 63, 570 A.2d 193 (1990). Although the state conceded that the defendant had satisfied the first prong, the Appellate Court, on its own, held that the defendant had not. The Appellate Court stated: "The defendant failed to meet the first *Whistnant* requirement; his request to charge was not an appropriate instruction. He requested an instruction on criminally negligent homicide, yet failed to recite the evidence that would support such a charge. His request to charge thus lacked the necessary factual predicate. See Practice Book § 854." *State* v. *Ray,* 30 Conn. App. 95, 100, 619 A.2d 469 (1993).

Notwithstanding the fact that the state did not seek to rely on this conclusion as an alternative ground for affirmance; see Practice Book § 4140 (a); we have reviewed it and disagree with the Appellate Court. Practice Book § 854 provides that each request to charge shall contain ''a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply.'' The defendant's request to charge the jury concerning criminally negligent homicide did not refer to any supporting evidence. The trial judge, however, required the request to be filed prior to the conclusion of the evidence. In *State* v. *Herring,* 210 Conn. 78, 105 n.25, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989), we held that where the trial court's actions contribute to a defendant's failure to comply with the first prong of *Whistnant,* compliance may be excused.

Furthermore, the defendant took exception after the charge to the trial court's omission of an instruction on criminally negligent homicide. Practice Book § 852 provides that ''[t]he supreme court shall not be bound to consider error as to . . . the failure to give . . . an instruction unless the matter is covered by a written request to charge *or* exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection.'' (Emphasis added.) After the defendant took

Appellate Court held, however, that the defendant's testimony did not place the evidence "sufficiently in dispute to support a finding of criminally negligent conduct" because "[r]ational jurors using common sense could not reasonably have found that the defendant did not perceive a substantial risk of death when he stabbed Morris with sufficient force to penetrate his chest and heart." *State* v. *Ray,* supra, 103. We disagree.

In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant,* supra, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. *State* v. *Montanez,* 219 Conn. 16, 22–23, 592 A.2d 149 (1991); *State* v. *Herring,* 210 Conn. 78, 106, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "[T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Rasmussen,* 225 Conn. 55, 68, 621 A.2d 728 (1993). Under *Whistnant,* the evidence is "sufficiently in dispute where it is of such factual quality that would permit the [jury] reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser

exception, the trial court, *Reilly, J.,* stated: "Your exception is noted. You did futilely file a request to charge on that. However, in review of the evidence involved in this matter and then in looking at the appropriate sections of the Practice Book I find that I am not going to give that charge." In view of this statement by the trial judge that he had reviewed the evidence and decided not to give the requested charge, further elaboration of the ground of objection by defense counsel was unnecessary.

We therefore conclude that the defendant satisfied the first prong of *Whistnant.*

included offense when the evidence requires either conviction on the greater offense or acquittal. . . . Nonetheless, jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on the evidence . . . from which inferences can fairly be drawn. . . . They should not [however] be encouraged to engage in speculation." (Citations omitted; internal quotation marks omitted.) *State* v. *Montanez,* supra, 23. On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if "we cannot as a matter of law exclude [the] possibility" that the defendant is guilty only of the lesser offense. *State* v. *Falby,* 187 Conn. 6, 30, 444 A.2d 213 (1982). "If, based on the admissible evidence presented at trial, the jury could reasonably have found that the defendant acted . . . with criminal negligence in causing the victim's death, then the defendant was entitled to the charge requested." Id., 29.

In *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980), we stated: "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. This is especially true where a person has caused the death of another person." The dividing line between manslaughter in the second degree, of which the defendant was convicted, and criminally negligent homicide is especially thin. To be guilty of the former, the defendant must be aware of and consciously disregard a substantial and unjustifiable risk that death will occur. General Statutes §§ 53a-56 (a) and 53a-3 (13). To be guilty of criminally negligent homicide, however, the defendant must fail to perceive a substantial and unjustifiable risk that death will occur. General Statutes §§ 53a-58 and 53a-3 (14). Therefore, the issue that distinguishes the two criminal offenses is whether the defendant subjectively realized and chose

to ignore a substantial risk of death; *State* v. *Salz*, 226 Conn. 20, 33, 627 A.2d 862 (1993); or merely failed to realize that he was creating a substantial risk of death.

The defendant claims that a jury reasonably could have found that he had failed to perceive the risk that he might cause Morris' death. He bases this claim on the evidence that: (1) the defendant was woozy and frightened; (2) it was dark in the hallway where the stabbing occurred; (3) Morris' wounds were consistent with the defendant flailing defensively at him with the knife while Morris moved around; (4) the defendant did not know whether he was injuring Morris or not; and (5) of the four times Morris was stabbed, three times he was stabbed in the right arm or shoulder, resulting in injuries that were not life-threatening. We agree with the defendant.

In *State* v. *Edwards*, 214 Conn. 57, 60, 570 A.2d 193 (1990), the victim was fatally shot when she attempted to take a gun away from the defendant, her brother, who was attempting to commit suicide. The defendant claimed that the trial court should have instructed the jury concerning criminally negligent homicide. We agreed, concluding that "[a] jury could infer that the defendant's preoccupation with ending his own life caused him to fail to perceive the risk to others created by his possession of a loaded gun and his volitional struggle to retain it." Id., 69. Similarly, in this case, a jury could infer that the defendant's preoccupation with protecting himself caused him to fail to perceive the risk of death created by his actions. The state argues that *Edwards* is distinguishable because, unlike committing suicide, using a knife in self-defense necessarily contemplates creating a risk to a third party. Even if it is assumed that the defendant necessarily realized that he was creating a risk of some kind, however, a jury could nevertheless find that his preoccu-

pation with protecting himself prevented the defendant from perceiving that he was creating a risk *of death* to Morris. Therefore, the state's argument fails.[8]

In agreeing with the state and affirming the trial court, the Appellate Court failed to view the evidence in the light most favorable to the defendant. The court mentioned, but gave no weight to, the defendant's testimony that he was woozy, frightened and unsure of whether he was injuring Morris. Further, the Appellate Court stated: "The testimony at trial demonstrated that while the hallway was dark, visibility was not impaired. The defendant stated that he could not see what Morris and A.J. were doing. Yet, he was able to distinguish the victims from Aldrich. He was also able to locate vulnerable areas of the victims' bodies. The forensic testimony dispels the defendant's claim that he blindly flailed at Morris. Morris had six stab wounds, one of which was the result of a plunge that penetrated the chest and pierced through the heart. Another wound went through Morris' arm and punctured his chest. Rational jurors using common sense could not reasonably have found that the defendant did not perceive a substantial risk of death when he stabbed Morris

---

[8] To address this flaw in its argument, the state claims that a "knife is a deadly weapon per se and one who uses it upon a vital part of another is deemed to have intended the probable result of that act . . . ." This argument, however, misses the point. The loaded gun discharged by the defendant in *State* v. *Edwards,* 214 Conn. 57, 570 A.2d 193 (1990), was certainly a deadly weapon, but this fact tells us nothing about the defendant's state of mind. In *State* v. *Smith,* 185 Conn. 63, 78, 441 A.2d 84 (1981), we specifically held that a defendant who fatally stabbed one woman with a five inch knife and wounded another was entitled to a jury instruction concerning criminally negligent homicide. The decedent in *Smith* was stabbed six times—three times in the chest, once in the upper abdomen and twice in the shoulder. The fatal wound to her chest and at least two of the others were seven inches deep. *State* v. *Lonnie Smith,* Conn. Supreme Court Records & Briefs, April Term, 1981, Pt. 4, Defendant's Brief p. 10, State's Brief p. 9. We rejected the state's argument in *Smith* that "to have an argument with the victim and to slash about with a five inch knife and stab her six times is beyond doubt reckless behavior." Id., State's Brief p. 44.

with sufficient force to penetrate his chest and heart." *State* v. *Ray,* supra, 102–103. This analysis ignores the defendant's testimony that he was using his knife defensively and did not know where he was stabbing Morris. It also misconstrues the testimony of the medical examiner, McDonough, that the injuries to Morris were consistent with "many different scenarios," including the defendant flailing at Morris with the knife while Morris was moving. From this evidence, the jury reasonably could have concluded that the fatal wound was caused, not as a result of the defendant recklessly lunging at Morris with the knife, but rather as a result of the defendant negligently stabbing Morris in the chest while blindly trying to fend him off. Viewing the evidence in the light most favorable to the defendant, we conclude that the defendant's state of mind was sufficiently in dispute so as to entitle him to a lesser included offense charge regarding criminally negligent homicide.

The judgment of the Appellate Court is reversed with respect to the conviction of manslaughter in the second degree and the case is remanded to that court with direction to remand the case to the trial court for a new trial on that count.

In this opinion the other justices concurred.