## STATE OF CONNECTICUT v. MUHYASIM ABDALAZIZ (AC 14625)

Foti, Lavery and Landau, Js.

---

Argued February 20—officially released July 1, 1997

*Susan M. Hankins*, assistant public defender, with whom, on the brief, was *John Barton*, for the appellant (defendant).

*Paul J. Ferencek*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Muhyasim Abdalaziz, also known as Alfredo Coto, appeals from the judgment of conviction, following a jury trial, of assault in the first

degree in violation of General Statutes § 53a-59 (a) (1)[1] and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[2] The defendant claims that the trial court improperly (1) denied the defendant's request for instructions on lesser included offenses, (2) denied the defendant's request to instruct the jury on a theory of "imperfect self-defense," (3) improperly precluded the defendant from offering evidence of the victim's prior convictions, and (4) deprived the defendant of his right to due process when it permitted the prose-

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 29-35 provides in relevant part: "Carrying of pistol or revolver without permit prohibited. Exceptions. (a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any sheriff, parole officer or peace officer of this state, or sheriff, parole officer or peace officer of any other state while engaged in the pursuit of his official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same has been repaired, or to any person carrying a pistol or revolver in or through the state for the purpose of taking part in competitions or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any other state or subdivision of the United States, or to any person carrying a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person carrying an antique pistol or revolver, as defined in section 29-33. . . ."

cutor to make prejudicial comments during his closing argument. We agree with the defendant's claim regarding the necessity for instructions on the lesser included offenses. Accordingly, we reverse the judgment on the assault charge and remand the case for a new trial.

The jury could have reasonably found the following facts. The victim, Michael Juarbe, and the defendant's wife, Carmen Rodriguez, had a five year relationship that ended in January, 1991. The defendant's wife had one daughter from this relationship with the victim. The victim had visitation rights with this daughter. In the summer of 1991, the defendant married Rodriguez. The defendant and the victim had several confrontations leading up to April, 1992.

On April 7, 1992, the defendant drove to the victim's New Haven apartment at approximately 10 p.m. Upon arriving at the victim's apartment, the defendant rang the doorbell located at the back door of the victim's premises. When the victim looked out his window, the defendant yelled to him to come out of the house to talk. The victim dressed and went to the front lawn of the apartment where he found the defendant standing on the sidewalk. The victim noticed that the defendant's car was parked in front of the premises and two men were sitting inside the vehicle. The victim and the defendant began to argue about the victim's visitation rights with his daughter and about telephone calls that were made by the victim to the defendant's home. The defendant eventually sat in the front passenger seat of his car. From that location, the defendant pulled a loaded revolver from under the car's seat and fired approximately five shots at the victim from a distance of six to nine feet. The victim was struck by four of the bullets and sustained serious injuries. After shooting the victim, the defendant and his two companions drove away in the defendant's car.

## I

The defendant first claims that the trial court improperly refused to instruct the jury on the lesser included offenses of assault in the second degree, assault in the second degree with a firearm and assault in the third degree. We agree.

"A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980).

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, [179 Conn. 588], we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . [T]he jury's role as factfinder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Ray*, 228 Conn. 147, 154, 635 A.2d 777 (1993). "If we cannot exclude, as a matter of law, the possibility that the defendant is guilty only of the lesser offense, we must

conclude that the trial court's failure to give the requested instruction is improper. Id., 155; *State* v. *Falby*, 187 Conn. 6, 30, 444 A.2d 213 (1982)." *State* v. *Huckabee*, 41 Conn. App. 565, 568, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996).

The defendant claims that, under *Whistnant*, he was entitled to a lesser included offense charge with respect to five of the lesser degrees of assault. The state concedes that the first prong of *Whistnant* is met.[3] The state argues, however, that the third and fourth prongs of *Whistnant* are not satisfied by the facts of this case. We agree with the defendant.

The second prong of *Whistnant* requires that "it [cannot be] possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser . . . ." *State* v. *Whistnant*, supra, 179 Conn. 588. In the present case, the defendant was charged in an information that "with the intent to cause serious physical injury to another person, he caused such injury to such person by means of a deadly weapon." At trial, the defendant requested a charge on the following lesser included offenses: assault in the second degree in violation of General Statutes (Rev. to 1991) § 53a-60 (a) (2) or (3),[4] assault in the second degree with a firearm in violation

---

[3] The state concedes that the defendant satisfies the second prong of *Whistnant* with respect to all of the requested lesser offenses except assault in the second degree in violation of General Statutes § 53a-60 (a) (2). We, however, will analyze the second prong of *Whistnant* as it pertains to all five requested lesser offenses because we feel the analysis will be more effective if done as a whole.

[4] General Statutes (Rev. to 1991) § 53a-60 provides in relevant part: "(a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

of General Statutes § 53a-60a,[5] and assault in the third degree in violation of General Statutes § 53a-61 (a) (3).[6]

The elements of the lesser included offenses on which instructions had been requested were included in the elements of the greater offense charged. The requisite mental states of the requested lesser offenses are subsumed in the mens rea that was stated in the information charging the defendant. The intent to cause "physical injury," as required by § 53a-60 (a) (2), is clearly included in intent to cause "serious physical injury," as set forth in the information. The remaining requested lesser offenses all require either a "reckless or negligent" mental state. In *State* v. *Rodriguez*, 180 Conn. 382, 407, 429 A.2d 919 (1980), our Supreme Court held "an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense."

The injury required by the requested lesser offenses is also subsumed under the "serious physical injury" that is described in the defendant's information. See

[5] Section 53a-60a requires either an intentional or reckless mental state, thereby constituting two lesser offenses for the purposes of this type of analysis. General Statutes § 53a-60a provides: "Assault in the second degree with a firearm: Class D felony: One year not suspendable. (a) A person is guilty of assault in the second degree with a firearm when he commits assault in the second degree as provided in section 53a-60, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. No person shall be found guilty of assault in the second degree and assault in the second degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

[6] General Statutes § 53a-61 provides in relevant part: "(a) A person is guilty of assault in the third degree when . . . (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon. . . ."

General Statutes § 53a-3 (3) and (4).[7] In addition, the defendant's information states that the serious physical injury was caused by a dangerous weapon, which by statute includes a firearm. See General Statutes §§ 53a-3 (6)[8] and 53a-3 (19).[9] Therefore, the requested lesser offense of assault in the second degree with a firearm, pursuant to § 53a-60a, would be included in the elements of the greater offense that was charged.[10]

In sum, all of the lesser offenses on which instructions were sought met the second prong of *Whistnant*. Furthermore, there is support in Connecticut law for the determination that several of the requested offenses can be lesser included offenses of assault in the first degree. See *State* v. *Huckabee*, supra, 41 Conn. App. 572 (holding that trial court erroneously failed to instruct jury on lesser included offenses of assault in first degree, which included assault in second degree pursuant to § 53a-60 [a] and assault in third degree pursuant to § 53a-61 [a]); *State* v. *Bunker*, 27 Conn. App. 322, 329, 606 A.2d 30 (1992) (trial court correctly

---

[7] General Statutes § 53a-3 (3) provides: " 'Physical injury' means impairment of physical condition or pain . . . ."

General Statutes § 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

[8] General Statutes § 53a-3 (6) provides: " 'Deadly weapon' means any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles. The definition of 'deadly weapon' in this subdivision shall be deemed not to apply to section 29-38 or 53-206 . . . ."

[9] General Statutes § 53a-3 (19) provides: " 'Firearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ."

[10] The state contends that § 53a-60 (a) (2) explicitly excludes the use of a firearm. The state's argument must fail, however, because this statute was amended in 1994 by Public Acts 1994, No. 94-2, § 5, to exclude injuries from the discharge of a firearm. When the shooting took place in 1992, General Statutes (Rev. to 1991) § 53a-60 (a) (2) did not exclude the use of a firearm.

instructed jury on lesser included offenses of assault in first degree, which included assault in second degree, pursuant to § 53a-60 [a] and assault in third degree pursuant to § 53a-61 [a]).

The third prong of *Whistnant* is satisfied when "there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, that justifies conviction of the lesser offense . . . ." *State* v. *Whistnant*, supra, 179 Conn. 588. In the present case, there was ample evidence adduced at trial justifying the conviction of the defendant of the lesser offenses. There clearly was evidence that the victim sustained serious physical injuries, and these injuries were caused with a deadly weapon, specifically a firearm. Therefore, there was sufficient evidence, concerning the victim's injury and the weapon used by the defendant, to justify a conviction as to those elements of the lesser requested offenses.

The main differentiating element between first degree assault and the lesser offenses is the mental state that is required for the commission of the crime. Intent is "often the most significant and, at the same time, the most elusive element of the crime charged." *State* v. *Rodriguez*, supra, 180 Conn. 404. At trial, the defendant testified that he fired the gun at the ground between his car and the victim to scare him away, believing that the victim was holding a gun. The defendant also testified that he fired the gun out of the car window while seated, and did not look where he fired. The location of the victim's wounds also support the defendant's contention that he fired downward to scare the victim. The victim testified that he was struck in the chest by a bullet as he lay on the ground, and his other wounds were in his leg and abdomen. In addition, there was testimony from police officers that they found bullets in the street that had been flattened as if they had been shot downward at the pavement. The sum of this

testimony supports the defendant's contention that he had fired the shots toward the ground to scare the victim, thereby providing some evidence of a potentially less culpable mental state, including either recklessness or negligence. Therefore, we conclude that the third prong of *Whistnant* is met.

The fourth prong of *Whistnant* requires that "proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* supra, 179 Conn. 588. "This could occur either through the right of cross-examination, the major function of which is to put certain matters in dispute, or through evidence presented as part of the defendant's case." (Internal quotation marks omitted.) *State* v. *Fernandez,* 5 Conn. App. 40, 47–48, 496 A.2d 533 (1985).

The key differentiating element in the present case is the defendant's mental state. The state conceded this point in its closing argument, stating that "the other main issue, as far as the state is concerned is, what was [the defendant's] intent that night? Was he intending to kill [the victim]? Was he intending to cause him serious physical injury?" Furthermore, the defendant specifically disputed the mental state of which he was accused when he testified that he did not intend to kill or to injure the victim seriously, but was acting in self-defense. We conclude, therefore, that the differentiating element between the greater and lesser offenses was sufficiently in dispute to meet the fourth prong of *Whistnant.*

"On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if 'we cannot as a matter of law exclude [the] possibility' that the defendant is guilty only of the lesser offense. *State*

v. *Falby,* [supra, 187 Conn. 30]." *State* v. *Ray,* supra, 228 Conn. 155. Having found that the defendant met all four prongs of *Whistnant,* we reverse the ruling of the trial court and remand this case for a new trial. While this issue is dispositive, we will nevertheless review the defendant's remaining claims so that we may presently address any issues that the defendant may raise in a future appeal.

## II

The defendant's second claim is that the trial court improperly refused to instruct the jury concerning a theory of imperfect self-defense. At trial, the defendant requested that the trial court give an instruction concerning imperfect self-defense with respect to assault in the first degree. The defendant contends that there was conflicting evidence on the issue of whether the victim possessed a gun and was accompanied by another. Therefore, the defendant argues that first degree assault could be reduced to assault in the second degree or assault in the second degree with a firearm, if the jury found that the defendant mistakenly believed that he was acting in self-defense, so that the shooting was a result of recklessness. We disagree.

The defense of imperfect self-defense is not recognized in Connecticut.[11] Maryland and California, however, have extensively used this doctrine. The California Supreme Court recently held: "Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant actually, but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary man-

---

[11] There are, however, several states that do recognize this doctrine, including: Maryland, California, New Jersey, Idaho, Illinois, New Mexico, and North Carolina.

slaughter." *In re Christian S.*, 7 Cal. 4th 768, 771, 872 P.2d 574, 30 Cal. Rptr. 2d 33 (1994). In Maryland, the Court of Appeals explained that the doctrine of imperfect self-defense, like that of hot-blooded response to adequate provocation, does not serve to exonerate a defendant " 'but mitigates murder to voluntary manslaughter.' " *State* v. *Faulkner*, 301 Md. 482, 486, 483 A.2d 759 (1984).

While these jurisdictions do recognize the doctrine of imperfect self-defense, their definition of the offense of murder is different from that of Connecticut. California Penal Code § 187 (a) (Deering 1985) provides: "Murder is the unlawful killing of a human being, or a fetus, *with* malice aforethought." (Emphasis added.) By contrast, California Penal Code § 192 (Deering 1985) provides: "Manslaughter is the unlawful killing of a human being *without* malice. . . ." (Emphasis added.) "The vice is the element of malice; in its absence the level of guilt must decline. The doctrine of imperfect self-defense and diminished capacity arose from this principle." *In re Christian S.*, supra, 7 Cal. 4th 773.

In Maryland, the Court of Appeals stated: " '[Imperfect self-defense] operates to negate malice, an element the State must prove to establish murder. As a result, the successful invocation of this doctrine does not completely exonerate the defendant, but mitigates murder to voluntary manslaughter.' " *Richmond* v. *State*, 330 Md. 223, 227, 623 A.2d 630 (1993). "In the context of murder cases, this Court has said that malice means the presence of the required malevolent state of mind coupled with the absence of legally adequate justification, excuse, or circumstances of mitigation. *Ross* v. *State*, 308 Md. 337, 340 n.1, 519 A.2d 735 (1987)." *Richmond* v. *State*, supra, 231.

Pursuant to General Statutes § 53a-54a et seq., however, our applicable murder statute requires the act of

causing death coupled with an "intent to cause the death of another person." Therefore, the Connecticut murder statute, which requires intent and an act, is somewhat different from the malice type of murder statutes, thereby making the doctrine of imperfect self-defense somewhat inapplicable.

It should also be noted that in these jurisdictions the doctrine of an imperfect self-defense applies only to murder and its "shadow" offenses, which may include attempted murder. See W. LaFave & A. Scott, Substantive Criminal Law (2d Ed. 1986) § 7.11, p. 272. Yet, in Maryland it is uncertain how far this doctrine can be stretched from the offense of murder. In *State* v. *Faulkner*, supra, 301 Md. 504, the Maryland Appellate Court stated: "Logically, because the statutory offense [assault with intent to murder] is defined in terms of murder, all the defenses available in a murder prosecution are applicable in an assault with intent to murder prosecution." While the *Faulkner* decision held that the mitigation defense of imperfect self-defense applies to the statutory crime of assault with intent to murder, that same court later held that this was a "generous expansion of the law of self-defense . . . ." *Watkins* v. *State*, 328 Md. 95, 106 n.3, 613 A.2d 379 (1992).

The majority view is that imperfect self-defense applies to murder and homicide charges. We hold that it does not apply to assault charges, and that the instructions on the lesser included offenses achieve the same result for the defendant.[12]

### III

The defendant's third claim is that the trial court improperly precluded the defendant from offering four of the victim's previous criminal convictions to show

---

[12] We do not determine whether it is appropriate to apply the doctrine of imperfect self-defense to other offenses in our penal statutes.

his violent character, as it pertained to the defendant's claim of self-defense. At trial, the defendant made an offer of proof outside the presence of the jury in which he attempted to introduce evidence that the victim had been previously convicted of five misdemeanor offenses.[13] The trial court only admitted the victim's March, 1991 conviction for assaulting the defendant. The trial court, however, excluded the victim's four other misdemeanor convictions, ruling they were too dissimilar in nature to the aggression alleged in the present case. We agree with the trial court's ruling.

" 'The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of discretion.' " *State* v. *Bruno,* 236 Conn. 514, 549, 673 A.2d 1117 (1996). " 'The trial court also has broad discretion in balancing the probative value of proffered evidence against its prejudicial effect. That discretion is subject to reversal only where an abuse of discretion is manifest or where an injustice appears to have been done.' " *State* v. *Weber,* 31 Conn. App. 58, 65, 623 A.2d 506, cert. denied, 226 Conn. 908, 625 A.2d 1379 (1993).

The defendant relies on *State* v. *Miranda,* 176 Conn. 107, 405 A.2d 622 (1978), for the proposition that because the convictions involve crimes of violence they are therefore relevant on the issue of initial aggression in relation to his claim of self-defense. While *Miranda* may stand for the general rule that evidence of a victim's prior convictions for violent crimes may be introduced as proof on the issue of initial aggression; id., 114; the defendant's reliance on *Miranda* is misplaced. In *Miranda,* our Supreme Court warned that a defendant is not "authorized to introduce any and all convictions of crimes involving violence, no matter how petty, how

---

[13] The defendant unsuccessfully attempted to introduce evidence of four prior misdemeanor convictions of the victim. These four convictions arose from confrontations with persons other than the defendant.

remote in time, or how dissimilar in their nature to the facts of the alleged aggression. In each case the probative value of the evidence of certain convictions rests in the sound discretion of the trial court." Id., 114.

Given the dissimilar nature of the victim's four excluded convictions from the facts of the alleged aggression in this case, we conclude that the trial court did not abuse its discretion.

## IV

The defendant's fourth claim is that the trial court improperly failed to give a curative instruction directed toward the allegedly improper comments made by the state's attorney. The defendant claims that the prosecutor, during his closing argument, improperly characterized portions of the defendant's testimony as "ludicrous" and "unbelievable." The defendant also objected to the prosecutor's arguing to the jury that they should ignore evidence of the victim's past disputes with the defendant. The defendant contends that the comments made by the state and the lack of a curative instruction by the trial court amounted to a violation of the defendant's right to due process. We disagree.

"In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . [W]e must review the comments complained of in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Villanueva*, 44 Conn. App. 457, 461–62, 689 A.2d 1141 (1997).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process,

this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

After reviewing the record as a whole, we conclude that the conduct of the state's attorney was not so egregious as to deprive the defendant of a fair trial.

The judgment is reversed only as to the conviction of assault in the first degree and the case is remanded for a new trial on that charge.

In this opinion the other judges concurred.