## STATE OF CONNECTICUT *v.* LAMAR DUPREE
### (AC 17583)

Foti, Mihalakos and Healey, Js.

Argued October 25, 1999—officially released February 15, 2000

*Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Toni Smith-Rosario,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence Mariani,* assistant state's attorney, for the appellee (state).

*Opinion*

HEALEY, J. The defendant, Lamar Dupree, was charged in a two count information with the crimes of assault in the first degree in violation of General Statutes § 53a-59 (a) (4) in the first count and assault in the first degree in violation of § 53a-59 (a) (1)[1] in the second count. After a jury trial, the defendant was found not guilty under the first count, but guilty under the second count of the lesser included offense of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[2] On appeal, the defendant claims that the trial court improperly refused his request to charge

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

the jury on the lesser included offense of criminally negligent assault in the third degree in violation of General Statutes § 53a-61 (a) (3).[3] We affirm the judgment of the trial court.[4]

The following facts and procedural history are relevant to our disposition of this appeal. The defendant filed his brief in this court on January 13, 1998. Thereafter, on December 11, 1998, the state filed a motion for permission to file a motion for rectification with respect to three issues. See Practice Book § 66-5, formerly § 4051. Subsequent to briefs being filed, this court denied the state's motion as to the first issue, but granted it as to the second and third issues.[5] On March

[3] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when . . . (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

[4] In the view that we take of the matter, it is not necessary for us to set out the evidence of the underlying crimes charged in the substitute information that involved a street fight in Waterbury between the defendant and another combatant in which both were apparently "armed" with razors that were wielded at each other. Rather, we will set out in this opinion those factual circumstances relevant to the sole issue of the trial court's rectification, which issue is dispositive of this appeal.

Moreover, the state claims that the defendant's request to charge did not satisfy the first, third and fourth prongs of *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). In view of our resolution of this appeal under the first prong, there is no need for us to reach the third and fourth prongs of *Whistnant*.

[5] The three issues for which the state originally asked rectification were:

"1. Whether, according to [the trial court's] recollection or any notes it may have taken, it held a preliminary charge conference on May 14, 1997, during a recess reflected in the transcript, at which it ordered the parties to disclose, prior to closing arguments, the subject areas to be covered by the written requests to charge that the trial court ordered to be filed by the following morning;

"2. Whether the basis of its denial of the defendant's request to charge on assault in the third degree under General Statutes § 53a-61 (a) (3) was the defendant's failure to disclose, in advance of closing arguments, that he would be filing a written request to charge on that subject; and

"3. Whether the jury received a charge on assault in the second degree under General Statutes § 53a-60 (a) (2) as a lesser included offense as requested by the state, was reinstructed on that charge after giving the trial

5, 1999, the state filed a revised motion for rectification on the two issues granted by this court.

Subsequently, the trial court filed its decision granting the state rectification on the two issues involved. Of the two issues on which the trial court granted rectification, only the first issue is relevant to the disposition of this appeal. See footnote 5. In its rectification on this issue, the trial court stated, inter alia, that "[t]he basis of the court's denial of the defendant's request to charge on assault in the third degree under General Statutes § 53a-61 (a) (3) was the defendant's failure to disclose, in advance of closing arguments, that he would be filing a written request to charge on that subject. He was ordered by the court to do so."[6]

Before proceeding further, it is necessary to set out additional circumstances that are germane to our dis-

court a note, and convicted the defendant under § 53a-60 (a) (2), despite the fact that the clerk's docket entry and the judgment mittimus refer to General Statutes § 53a-60 (a) (3) and the transcription of the trial court's request for the jury verdict further confuses the issue by referring to General Statutes § 53a-60 (a) (3)."

[6] The trial court's entire statement in the rectification of the record on the first issue states: "The basis of the court's denial of the defendant's request to charge on assault in the third degree under General Statutes § 53a-61 (a) (3) was the defendant's failure to disclose, in advance of closing arguments, that he would be filing a written request to charge on that subject. He was ordered by the court to do so. Having had a prior experience with defendant's counsel handing this court a request to charge while seated on the bench and about to begin its charge, this court was particularly concerned about a repeat occurrence. The preargument discussions with both counsel made it abundantly clear to me that the only requested lesser included offense would be the state's.

"The court also gratuitously added its belief that the facts also did not warrant such an instruction. However, the basis for the denial was the defendant's counsel's failure to follow the court's direction to apprise it of any requests that would be in addition to the boilerplate instruction, specifically, lesser included offenses. The defendant's counsel was mute on the subject. He thereafter tried his 'surprise' which he knew full well was in derogation of our charge discussions in fact and in spirit. The colloquy on the record after the closing argument had nothing to do with the subject of lesser included offenses. It only had to do with any variations on the boilerplate charge or matters that they might not want charged."

cussion and analysis of the defendant's appeal. On the morning of May 14, 1997, the state rested its case-in-chief prior to the lunch break. The defendant then made his motion for judgment of acquittal on both counts of the substitute information. The trial court denied the motion. Thereafter, the defendant presented Kevin Wilson as a witness. After Wilson had completed his testimony, the jury was excused for lunch and left the courtroom. Immediately thereafter, the following colloquy took place:

"The Court: Are we having evidence at 2 o'clock, or are we having argument at 2 o'clock?

"[Defense Counsel]: Well, I think we have to discuss the charge first, you know. Are we going to—

"The Court: Pardon me?

"[Defense Counsel]: You're going to have to discuss the charge first.

"The Court: Well, if you—I'll say it again. If you have any charges you want, you have to give them to me. Or if you want any charges for me not to give, you've got to tell me that. I'm not going to have a charging conference on this case that's going to—

"[Prosecutor]: I'm asking for a charge on assault in the second degree.

"The Court: Well, you get it to me; you give me what you want.

"[Prosecutor]: You want me to give it to you?

"The Court: Yep.

"[Prosecutor]: Okay.

"The Court: You've got time now over the lunch hour.

"[Defense Counsel]: I would probably be presenting [Thomas] Nalband[7] at 2 o'clock if he's available, Your Honor.

"The Court: At 2 o'clock?

"[Defense Counsel]: Two o'clock, yeah.

"The Court: He's the public defender?

"[Defense Counsel]: Yes, across the street.

"The Court: All right, we'll continue with evidence at 2:10 p.m. I'm going to request both of you to give me for tomorrow morning full charges, full requests to charge tomorrow morning."

After the recess and in the absence of the jury, the defendant renewed his motion for acquittal and the court again denied it. The following colloquy then took place:

"The Court: All right. We note that you've rested, and same ruling on the motions for judgment of acquittal. The state have anything?

"[Prosecutor]: No, Judge. I just wanted to put on the record . . . what we discussed in chambers, that I am going to be arguing in accordance with *State* v. *Woods* [25 Conn. App. 275, 280–81, 594 A.2d 481, cert. denied, 220 Conn. 923, 598 A.2d 365 (1991)], just so the defense can't claim surprise, that you've agreed to give a charge in accordance with that case, which says that the skin on a human being constitutes a bodily organ in terms of proving assault in the first degree. And also that we discussed self-defense, and there is going to be a self-defense charge.

"The Court: Are you going to argue self-defense, [defense counsel]?

---

[7] Nalband never testified.

"[Defense Counsel]: It's going to be one of my many arguments, yes, Your Honor.

"The Court: Okay. I just want to make sure you're arguing it so we don't—

"[Defense Counsel]: Yes.

"The Court:—we don't bring that in if we're not going to—you are?

"[Defense Counsel]: Yes.

\* \* \*

"[Prosecutor]: Are you entertaining the thought of giving the charge today?

"The Court: No. No."

The jury then returned to the courtroom and the defense rested. Both the state and the defense presented their final arguments. The court then excused the jury, telling them to report at 10 a.m. the following day.

After the jury left, the following colloquy occurred:

"[Defense Counsel]: What time are we meeting tomorrow, Your Honor, for the charge?

"The Court: Nine o'clock.

"[Defense Counsel]: Nine o'clock?

"The Court: Nine o'clock, ten after, five after nine?

"[Prosecutor]: Yeah, I thought it was pretty much settled. I mean there's nothing to go over, right? We're going to get the assault under the one subsection.

"[Defense Counsel]: Well, if we have any requests to charge they should be submitted by tomorrow morning.

"The Court: Yeah, they should be there by 9 o'clock so that I can get a chance to look at them and evaluate them, all right?

"[Prosecutor]: Sure. But I mean there's nothing new that's coming up that I know of, right?

"[Defense Counsel]: I don't know.

"The Court: Okay. But I just want—I don't want to charge the jury and then come out and say, oh, really what I wanted you to say was this, too.

"[Prosecutor]: I understand.

"The Court: So if there's anything special, get [it] to me. Anything you don't want said, get it to me. You've had a peek at—you know what I'm going to say. Okay. We'll adjourn court, then, until 10 o'clock tomorrow morning. Thank you."

On the next day, May 15, 1997, the state filed a request to charge on assault in the second degree, § 53a-60 (a) (1), as a lesser included offense of assault in the first degree, § 53a-59 (a) (1). The defendant filed several requests to charge, including one on assault in the third degree, § 53a-61. The court's instructions included one on assault in the second degree but did not include one on assault in the third degree.

After the court's instructions, the defendant took exception to the failure of the court to instruct on assault in the third degree. At that time, the following colloquy occurred:

"[Defense Counsel]: . . . Finally, number ten, I requested the court charge on criminally negligent assault in the third degree . . . as a lesser offense, which the court did not give. I take exception to the court's failure to charge on criminally negligent assault in the third degree as a lesser offense under the circumstances of this case as indicated in the request to charge.

And by the law under *State* v. *Smith* [185 Conn. 63, 76–79, 441 A.2d 84 (1981)].

"The Court: All right. The exceptions are noted. I'll just comment on one of them, and that was the request regarding the prior incarceration of the defendant. . . . Okay. You want to take a look—

"[Prosecutor]: Can I respond to that, or is that inappropriate?

"The Court: If you'd like to.

"[Prosecutor]: . . . And as to the lesser included offenses, the court made it clear to myself and to defense counsel on a number of occasions that if we wanted charges on lesser included offenses, we should have requested those yesterday. At least that was my understanding.

"[Defense Counsel]: Your Honor gave us till this morning to file official requests to charge. I would not agree to going to argument yesterday if the court had not given us that position. I note that [the prosecutor] got a charge on assault in the second degree wherein . . . he did not make an offer under the proper form of the Practice Book. He did not cite facts, and he did not lay out the charge for the court. I laid out the charge for the court, and I recited what facts distinguished the mental state between intent to cause serious physical injury and criminally negligent mental state, if the court pleases, for the record.

"The Court: Did you argue assault [in the second degree] to the jury?

"[Defense Counsel]: No, I didn't argue assault [in the second degree].

"[Prosecutor]: Well, I made the decision and got the court's approval on getting the charge on assault in the second degree prior to my argument.

"The Court: To argument, right.

"[Prosecutor]: And one of the problems the state feels it would have been prejudiced by allowing the charge on assault in the third degree because I never even had an opportunity to address that in my closing argument; and I don't recall specifically whether or not I even brought up the assault [in the second degree]. But at least I knew and defense counsel knew prior to the closing argument and prior to us having a chance to talk to the jury that that charge was at least going to them.

"[Defense Counsel]: But there's no harm to the [state]. He didn't—he didn't argue assault [in the second degree], Your Honor. If he's entitled to [an] assault [in the second degree] charge on an improper form, I'm entitled to an assault [in the third degree] charge, and I would take serious exception to that, Your Honor.

"The Court: Okay. All right, thank you.

"[Defense Counsel]: And I'll never again allow arguments before filing written requests.

"The Court: Okay. Take a look at the exhibits, please, gentlemen, and see if we can agree upon them going in."

Ultimately, the jury found the defendant not guilty under the first count but guilty under the second count of the lesser included offense of assault in the second degree in violation of § 53a-60. Thereafter, the defendant filed a motion for a new trial, which alleged the trial court's failure to comply with the rules of practice, the failure to charge on assault in the third degree and the result of these failures.[8] In denying this motion the

[8] In his motion for a new trial, the defendant made the following claims, inter alia: "(d) [T]he Court [ordered] counsel for the State and the defendant to present final arguments to the jury prior to filing official requests for jury instructions in violation of Sections 853 and 854 [now §§ 42-17 and 42-18] of the Connecticut Practice Book.

"(e) [T]he Court gave the State's request on the lesser included offense of assault in the second degree even though the request was not in proper form and was not timely.

court said in part: "Subsection D, the court—I don't know what that means—counsel for the state and the defense provide final arguments. Prior to the filing, official, written requests for jury instructions, that would be on assault [in the] second [degree], the crime for which the defendant had been convicted, that it's true that final—that written requests were not placed in the file before that event, but these matter[s] were discussed in chambers. There is no objection. The court considered this to be waived. As a matter of fact, this was argued to the jury by counsel. No prejudice is found to the defendant.

"The court I think properly refused to charge on assault in the third degree although I don't recall if I had a request on that, but even if I did, assault in the third degree is not a lesser offense in this particular charge. The claim here is that he was cut by a razor and the fact is, was he or wasn't he." Thereafter, as already noted, the court filed its rectification of the record, which sets out its reasoning for denying the defendant's request to charge on assault in the third degree.

The defendant argues that the trial court acted improperly in failing to instruct the jury on assault in the third degree in violation of § 53a-61 (a) (3) as a lesser included offense of assault in the first degree in violation of § 53a-59 (a) (1). In doing so, he claims that he acted not only timely but also consistent with the trial court's order to provide the court with "full requests to charge tomorrow morning [May 15, 1997]" after closing arguments. He argues also that in doing so, the trial court "authorized the violation of § 853 of the Practice Book by both the state and the defendant." He maintains

---

"(f) [T]he Court compounded the unfairness of paragraph (e) above by refusing to charge on assault in the third degree as a lesser offense even though the defendant's request was in proper form but late because of the action in paragraph (d) above."

that any violation of Practice Book § 853,[9] now § 42-17, was, in effect, induced by the court. He contends, therefore, that his request to charge on the lesser included offense should have been given because it satisfied all four prongs of *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980).[10] We do not agree.

"There is no fundamental constitutional right to a jury instruction on every lesser included offense"; id., 583; rather, the right to such an instruction is purely a matter of our common law. "A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id., 588.

Under the first prong of *Whistnant* we must determine whether the request to charge constituted an appropriate instruction. "A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant*

---

[9] Practice Book § 853 provides: "Written requests to charge the jury must be filed in triplicate with the clerk before the beginning of the arguments or at such earlier time during the trial as the court directs, and the clerk shall file them and forthwith hand one copy to the judicial authority and one to opposing counsel. A party's requests to charge may be amended in writing as a matter of right at any time prior to the beginning of the charge conference."

[10] As stated previously, in footnote 4, our resolution of this appeal requires that we discuss only the first prong of *Whistnant*, which is dispositive.

if it complies with Practice Book § 854. *State* v. *Hall*, 213 Conn. 579, 591, 569 A.2d 534 (1990); *State* v. *Ostroski*, [201 Conn. 534, 556–58, 518 A.2d 915 (1986)]; *State* v. *McIntosh*, [199 Conn. 155, 158–61, 506 A.2d 104 (1986)]. Section 854 provides in relevant part: 'When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply . . . .' " *State* v. *Arena*, 235 Conn. 67, 75, 663 A.2d 972 (1995). "We have held that, in the context of a written request to charge on a lesser included offense, this requirement of § 854[11] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) *State* v. *Hall*, supra, 591; *State* v. *Tomasko*, 238 Conn. 253, 261–62, 681 A.2d 922 (1996); *State* v. *Vega*, 48 Conn. App. 178, 183, 709 A.2d 28 (1998).

The defendant's arguments gloss over the circumstance that his request to charge on § 53a-61 (a) (3) was filed in violation of the trial court's order that directed both the state and the defendant to disclose, in advance of closing arguments, any lesser included offense on which they would be filing a written request to charge. The defendant's failure to obey that order was the trial court's basis for its refusal to give the

---

[11] At the time of the trial, in the case before us, Practice Book § 854 provided: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based and, if requested by the judicial authority, the evidence to which the proposition would apply. Requests to charge should not exceed fifteen in number unless, for good cause shown, the court permits the filing of an additional number. If the request is granted, the judicial authority shall apply the proposition of law to the facts of the case.

"A principle of law should be stated in but one request and in but one way."

defendant's requested charge. As the court noted in its rectification, its preargument discussions with both counsel made it "abundantly clear" to the court that the only requested lesser included offense was that of the state. The record before us bears that out. That record fairly makes evident that on the morning of May 14, 1997, after the sole defense witness testified, a recess was taken during which counsel met with the court in chambers and that possible requests to charge were discussed. To underscore that, the record indicates that after the recess, counsel for the state said that he "just wanted to put on the record that what we discussed in chambers, that I am going to be arguing in accordance with *State* v. *Woods*, [supra, 25 Conn. App. 275], just so the defense can't claim surprise, that you've agreed to give a charge in accordance with that case . . . . And also that we discussed self-defense, and there is going to be a self-defense charge."[12] Other than to state that he intended to argue self-defense, defense counsel said nothing in response, or in addition to, what the prosecutor said of what occurred in chambers.

The trial court, in ordering the disclosure of the subject areas of the requests to be disclosed before the final arguments, while at the same time permitting the formal filing of the written requests on the following morning, in effect, sua sponte, ordered a partial waiver of Practice Book § 853.[13] Neither party objected to the arrangement. In fact, it advantaged the defendant in that he knew prior to the final arguments that the state, which had followed the court's disclosure order, would be filing a formal request to charge on the lesser included offense of assault in the second degree the following morning. That gave the defendant an opportu-

---

[12] The trial court did instruct the jury on self-defense.

[13] This arrangement apparently came about, at least in part, because of a prior experience of the trial court with defense counsel, to which the court referred in the rectification filed in this matter.

nity, had he decided to do so, to respond to that during final arguments.

On the other hand, the defense posture disadvantaged both the court and the state. First, in keeping with the substance and the spirit of the court's disclosure order, it deprived both the court and the state of adequate time to consider the subject area disclosed and to investigate the relevant case law. Second, it disadvantaged the state by foreclosing it from responding to it during the final arguments as well as to question its applicability in the first instance.[14] We agree, therefore, with the state that the timing of the defendant's disclosure violated the implicit notice requirement of Practice Book § 854 and went beyond the limits of the court's waiver of Practice Book § 853.

Nevertheless, the defendant argues that his failure to comply with the requirement of Practice Book § 853 that requests to charge should be filed before final arguments should be excused here because that violation[15] was induced by the trial court. We do not agree. There was no "violation" as claimed because the trial court exercised properly its discretion in ordering the partial waiver of Practice Book § 853. See *McKesson & Rob-*

---

[14] The trial court's rectification pointed out that it was "its belief that the facts also did not warrant such an instruction [as ultimately requested in writing by the defendant on the morning of May 15, 1997]." We, however, need not decide that issue.

[15] The defendant claimed that the trial court "authorized the violation of § 853 of the Practice Book by both the state and the defendant." There was, however, no "violation" of Practice Book § 853. Practice Book § 1-8, formerly § 6, provides for a liberal interpretation of our rules of practice. "Procedural rules are not ends in themselves but only the means of administering justice, and exceptions to them in specific cases may be allowed where no violation of constitutional rights is involved." *State* v. *Anonymous (1976-2)*, 32 Conn. Sup. 306, 312, 353 A.2d 789 (1976). "There is no fundamental constitutional right to a jury instruction on every lesser included offense; *State* v. *Whistnant*, [supra, 179 Conn. 583]; rather, the right to such an instruction is purely a matter of our common law." (Internal quotation marks omitted.) *State* v. *Tomasko*, supra, 238 Conn. 260.

*bins, Inc.* v. *Shushkiewich*, 10 Conn. Sup. 237, 239–40 (1941). In any event, the defendant's claim here is wide of the mark. The court's refusal of his request was not because of any violation by him of Practice Book § 853, but rather was clearly based on his failure to disclose, as ordered on the previous day, the subject areas of his requests prior to final arguments.

While the court was taking the exceptions to its jury instructions and after the defendant had excepted to the court's failure to give its request on third degree assault, the state said that, as to the lesser included offenses, the court had made it "clear to myself and to defense counsel . . . that if we wanted charges on lesser included offenses, we should have requested those yesterday. At least that was my understanding." Defense counsel replied that the court "gave us [until] this morning to file *official* requests to charge. I would not agree to going to argument yesterday if the court had not given us that position." (Emphasis added.) He continued, noting that the state had received an instruction on second degree assault where its request was not "under the proper form of the Practice Book," that it did not cite facts and "did not lay out the charge for the court" whereas his request did lay out the charge for the court and recited the required facts.[16] Disputing the state's claim that it had been harmed by the manner in which the defense had proceeded in this regard, defense counsel maintains that "if [the state was] entitled to [an] assault [in the second degree] charge on an improper form, [the defendant is] entitled to an assault [in the third degree] charge . . . ."[17]

---

[16] The quality and content of the defendant's request to charge are not relevant in this appeal.

[17] The statement of this "tit for tat" argument of the defendant lacks merit because it does not factor in the real focus of the matter—the failure of defense counsel to follow the disclosure order of the trial court. In any event, it is not adequately briefed and can be considered abandoned. *State* v. *Rodriguez*, 44 Conn. App. 818, 823, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997).

As to what defense counsel indicated the court had said on the previous day, the short answer to that claim is what the court's rectification had stated as well as the trial transcript itself. Both indicate that defense counsel was silent when the prosecutor reiterated on the record what he understood after the chambers conference on May 14, 1997. While it is correct that the court gave both the state and the defendant until the morning of May 15, 1997, to file "official requests," any fair assessment of the context of the proceedings demonstrates that "official requests" means the formal written requests as to those subject areas the court ordered both counsel to disclose on the previous day. Any other interpretation wholly overlooks the court-ordered waiver of Practice Book § 853 on May 14, 1997. It is apparent, from what we have stated previously, that the defendant's request to charge was not "an appropriate instruction" under that first prong of *State* v. *Whistnant*, supra, 179 Conn. 588. The defendant's decision to file his request in violation of the disclosure order of the trial court, which included that court's partial waiver of the time filing requirements of Practice Book § 853, also involved a violation of the notice requirements implicit in Practice Book § 854, thereby rendering it "inappropriate" under the first prong of *Whistnant*.

We should point out that the defendant, in seeking to support his claim of induced error, refers to two Supreme Court cases both of which are clearly distinguishable from the circumstances of this case, *State* v. *Herring*, 210 Conn. 78, 105 n.25, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989), and *State* v. *Ray*, 228 Conn. 147, 153 n.7, 635 A.2d 777 (1993). In both *Herring* and *Ray*, the defendant's dilemma involved conduct induced by the trial court. In *Herring*, the Supreme Court excused the defendant's failure to file a written request where "defense counsel,

upon inquiry to the trial court, had been reassured that he need not file a formal, written request to charge and that his oral request sufficed." *State* v. *Herring*, supra, 105 n.25. The *Herring* court did not, therefore, find the defendant's proposed instruction "inappropriate" under the first prong of *Whistnant*. Id. In *Ray*, the trial court required the defendant's request for a lesser offense that did not contain any supporting evidence to be filed *prior* to the conclusion of the evidence. The court, in *Ray*, therefore, excused the defendant's failure to comply with the first prong of *Whistnant*. The case before us, unlike both *Herring* and *Ray*, is not one of court-induced error.

Turning to the defendant's argument concerning the state's written request to charge, we determine that while not as artful as possible, it did not mislead or prejudice the court or the defendant. The state's intention to request a charge on the lesser included offense of assault in the second degree in accordance with *State* v. *Woods*, supra, 25 Conn. App. 275, had been timely disclosed. The request disclosed the proposition of law for which *Woods*, properly cited, was being requested. The request also disclosed that the state claimed that assault in the second degree was claimed as a lesser included offense of the crime charged in count two of the substitute information. Insofar as the defendant attacks the state's request as to its factual content when he suggests that it violated Practice Book § 854, we point out that Practice Book § 854, as it existed at the time of this trial, required a recitation of the evidence to which the proposition of law applied only "if requested by the judicial authority."[18] See L. Orland & D. Borden, 4 Connecticut Practice Series: Practice Book Annotated, Criminal Procedure (3d Ed. 1999) § 42-18, p. 427; see also *State* v. *Vega*, supra, 48 Conn. 183 n.5.

---

[18] This language was deleted from Practice Book § 854, now § 42-18, effective October 1, 1997.

Neither the court nor the defendant was misled by the state's request.

The judgment is affirmed.

In this opinion the other judges concurred.